**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

```
_____
Steven B. Pollack and                    )
Blue Eco Legal Council,                  )
                                         )
            Plaintiffs,                  ) Case Number: 08-cv-320
                                         ) Assigned Judge: Guzman
      v.                                 ) Magistrate Judge: Brown
                                         )
United States Department of Justice,     )
United States Coast Guard,               ) CWA, RCRA, CERCLA, AND
United States Navy,                      ) PUBLIC NUISANCE FTCA CASE
United States Marines, and               )
United States Department of Defense,     )
                                         )
_____Defendants._____    )
```

**PLAINTIFFS Fed. R. Civ. P. 26(f) INITIAL STATUS REPORT AND PROPOSED DISCOVERY PLAN**

Plaintiffs Steven B. Pollack and Blue Eco Legal Council submit this Federal Rule of Civil Procedure 26(f) initial status report and proposed discovery plan on March 10, 2008 stating:

**DATE/PLACE OF CONFERENCE:** February 27, 2008 via conference call.

**COUNSEL PRESENT/REPRESENTING:** Steven B. Pollack for Plaintiffs and David Gualtieri, et al, for Defendants

**CASE SUMMARY AND THEORY OF LIABILITY:** Defendant FBI, Navy, and Marines conduct, and have conducted, firearms training at the North Chicago facility adjacent to Lake Michigan and Defendant Coast Guard conducts, and has conducted, firearms training on the waters of the United States.

Plaintiffs claim Defendants are discharging and discarding lead bullets into the waters of the United States without a NPDES permit as required under the Clean Water Act. Plaintiffs therefore request an injunction against the continued operation of the North Chicago facility and continued training by the Coast Guard with lead bullets.

Plaintiffs further allege that the accumulation of past and present discharges at the North Chicago facility over 90 years has created an imminent and substantial endangerment under the Resource Conservation and Recovery Act. Plaintiffs therefore request Defendants pay $8.2 million to conduct a Wide Area Assessment and $27 million to remove the lead bullets from state owned lakebeds.

Plaintiffs finally allege that the discharges by Defendants of lead bullets and lead shot which accumulate on state owned lake and ocean beds are a public nuisance and have damaged natural resources for which Defendants are supposed to be acting as trustees for the benefit of Plaintiffs who are trust beneficiaries. Plaintiffs therefore demand Defendants compensate Plaintiffs under federal tort, and under the Comprehensive Environmental Resource Compensation Liability Act, by paying $20 million to two 501(c)(3) environmental groups for damages it caused to public resources.

**THEORY OF DEFENSE:** Defendants theory seems to revolve around jurisdictional facts it will submit as part of its motion to dismiss which has not been filed as of the filing of this report.

**JURISDICTIONAL QUESTIONS:** Defendants claimed in this meeting that the FBI substantially rebuilt the berm at its firearms training facility in North Chicago and that it is now virtually impossible for bullets to enter Lake Michigan. If bullets don't enter Lake Michigan anymore, according to their theory, then their CWA violations are wholly past and this Court does not have jurisdiction.

The Defendants next asserted that they have started a previously secret cleanup under CERCLA and that Plaintiffs' suit is therefore a challenge to that cleanup and as such, is barred under 42 U.S.C. § 9613(h).

Defendants finally claim that Plaintiffs never made a sum certain demand for damages as required under the Federal Tort Claims Act and that the claim should also be dismissed.

**QUESTIONS OF LAW:** Do the Coast Guard's continuing violations in other parts of the country, after voluntarily suspending training in the Great Lakes and refusing to admit guilt, constitute ongoing violations?

Does Defendants' initiation of previously undisclosed cleanup (under CERCLA) deprive this Court its jurisdiction to abate an imminent and substantial endangerment under RCRA?

**QUESTIONS OF FACT:** Do bullets and shot continue to enter Lake Michigan at the North Chicago Range notwithstanding the newly rebuilt berm and therefore constitute an ongoing violation?

DISCOVERY PLAN

**DISCOVERY NEEDED:** Plaintiffs are seeking discovery of documents showing that discharges of lead bullets into navigable waters are an ongoing violation of the

Clean Water Act.  Additional documents showing who trained at the North Chicago Range and the quantity of lead discharged since 1918 are being sought to prove that substantial amounts of lead sit on the lakebed, thereby presenting an imminent and substantial endangerment under the Resource Conservation Recovery Act.  Plaintiffs will also seek documents pertaining to Defendants alleged CERCLA cleanup, a secret until two days before the 26(f) conference, that it now claims precludes suit.

Plaintiffs are propounding requests to admit and serving interrogatories on these subjects in order to limit the issues needing to be proved at trial.

**MANDATORY DISCLOSURES (Fed. R. Civ. P. 26(a)(1)):** Plaintiffs seek mandatory disclosures March 12, 2008 according to the federal rules.  Defendants seek to wait until its motion to dismiss is decided to turn over any discovery.

**AMENDMENT OF PLEADINGS:** Plaintiff believes, and Defendants indicated the belief was correct, that other federal agencies, and municipal and state police, also train at the North Chicago Range.  Upon receipt of discovery, notably FBI Range Manifests, Plaintiffs intend to send out new 60 and 90 day notices of intent to sue to these additional parties, and at the maturation date to amend the complaint to include them as additional defendants.

Defendants stated they oppose this, believing that the current federal agencies are sufficient representatives of the United State Government.  Plaintiffs will forego adding additional federal agencies as Defendants only if Defendants stipulate that any declaratory and injunctive relief granted by this Court regarding the discharge of lead bullets into the waters of the United States is binding on the entire Executive Branch.

Plaintiffs would still consider amending the complaint to bring in additional municipal and state governments as defendants whose police discharge lead bullets into Lake Michigan at the North Chicago Range.

**SETTLEMENT POSSIBILITIES:** Defendants did not want to talk about settlement because of their belief that their motion to dismiss will be dispositive.

**DISPUTED DISCOVERY ISSUES:**

**Disagreement As To Start of Discovery** – Plaintiffs ask that discovery begin immediately.  Defendants feel it should be stayed pending the resolution of their motion to dismiss.  Plaintiffs feel this is unwarranted for two reasons.  Defendants' motion to dismiss is predicated on jurisdictional facts they plan to create by affidavit in their motion to dismiss.

Defendants claim their new taller berm is so effective that there are no ongoing violations. This is contradicted by Plaintiffs expert (See James Barton affidavit, Plaintiffs Motion for Preliminary Injunction), by a report created by Defendants own expert (see Compl. Ex G), and by federal regulations pertaining to this range that states bullets do in fact miss and ricochet off the berm and enter the lake (See Compl. Ex. J). They all say the same thing; bullets miss and ricochet off the berm

Besides being a weak argument on its own merit, Plaintiffs expect discovery to provide jurisdictional facts supporting this Court's jurisdiction and it would be unfair to dismiss Plaintiffs case on Defendants' affidavits when rebutting evidence is easily obtainable.

Defendants' second self-authenticated assertion is that they have initiated a formerly secret cleanup under CERCLA and that this denies the Court jurisdiction. Plaintiff does not believe an undefined cleanup precludes this Court's jurisdiction to order a specific cleanup to abate an imminent and substantial endangerment under RCRA.

Plaintiff asked Defendant on February 29, 2008 if there are any publicly available documents evidencing a cleanup. Defendants have not offered any as of this date, March 10, 2008.

Plaintiffs' right to discovery under the federal rules of civil procedure should not be held in abeyance based on controverted declarations in Defendant motion, in advance of this Court's determination of that motion.

**Completing Discovery Requests** – Defendants assert they cannot comply with requests for production and requests to admit within the 30 days required by Fed. R. Civ. P. because of the number of agencies involved and the time frame in which their violations of law are alleged. Plaintiffs oppose allowing for a rolling production of discovery as proposed by Defendants because the date certain requirements of the federal rules are a guarantee that all discovery has been presented, with an ongoing obligation to supplement. An allowance for rolling production removes Defendants' obligation that production be complete at any particular point in the process, leaving Plaintiffs with no recourse for discovery violations.

Defendants are five of the largest organizations in the country by budget and manpower and have been on notice of this case since October 1, 2007. If they cannot fulfill their discovery obligations within the 30 days required then who could?

**Property Inspection** – Plaintiffs have requested a property inspection be scheduled for Monday March 17, 2008 when its expert, James Barton is in town from Norfolk

VA.  This date is within the 30 days of the 26(f) conference (Feb. 27, 2008) and the request for inspection (Feb. 28, 2008) as required under Fed. R. Civ. P. 34(b)(2)(A) Plaintiffs first notified Defendants of this date on February 14, 2008.  Defendants have resisted allowing this property inspection in several different communications.

**Deposing Blue Eco Members** – Defendants' attorney, the United States Department of Justice, has asserted its right to depose members of Blue Eco Legal Council. Plaintiffs seek to limit these depositions under Fed. R. Civ. P 30(d)(3) because the threat of such depositions are causing some Blue Eco Legal Council members to renounce membership.

Defendants are using the power of the Department of Justice to "unreasonably…oppress the…party," Fed. R. Civ. P. 26(c)(1) i.e. Plaintiffs organization, the members of which often join as a show of support for the organizations' goals and not to become involved in litigation.

Depositions for the purpose of discovering if Plaintiffs organization has standing to sue should therefore be limited to questions of 1) if the person is a member of Blue Eco Legal Council, 2) if the person uses and enjoys the natural environment that Defendants are accused of harming, and 3) if the person is an Illinois resident for purposes of damages. Plaintiffs will be filing a motion to limit the scope and duration of such depositions.

Plaintiff ask this Court to limit the number of such Blue Eco member depositions to three, thereby allowing Defendants to satisfy themselves that Blue Eco Legal Council is in fact an organization with members giving it standing to sue.

PROPOSED DISCOVERY PLAN

1. Service of Rule 26(a) initial disclosures:…………….. March 12, 2008
2. Commencement of fact discovery:……………………. February 27, 2008
3. Fact discovery cut-off (except for admissions):………9 months after MTD
4. Expert Discovery:
    a. Plaintiffs' expert disclosures:…………………..10 months after MTD
    b. Defendants' expert disclosures:………………..60 days after 4(a)
    c. Expert discovery cut-off
       (including completion of depositions):……….. 60 days after 4(b)
5. Dispositive motions cut-off:……………………………. 60 days after 4(c)
6. Request for admission cut-off:………………………… 30 days before pre-trial conference
7. Final Pre-trial conference:…………………………….. To be scheduled by court
8. Trial: ……………………………………………………….. To be scheduled by court

Respectfully Submitted,
s/ Steven B. Pollack
Attorney for Plaintiffs
Blue Eco Legal Council
3390 Commercial Ave
Northbrook, IL 60062
(847) 436-9566
steve@ecoesq.com