# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

STEVEN B. POLLACK AND BLUE ECO )
LEGAL COUNCIL, )
)
          Plaintiffs, )
)
      v. )
) No. 08 C 320
UNITED STATES DEPARTMENT OF ) Judge Guzman
JUSTICE, UNITED STATES COAST )
GUARD, UNITED STATES NAVY, )
UNITED STATES MARINE CORPS, AND )
UNITED STATES DEPARTMENT OF )
DEFENSE, )
)
          Defendants. )

## DEFENDANTS' RULE 26(f) CONFERENCE REPORT
## AND PROPOSED DISCOVERY PLAN

    Defendants United States Department of Justice ("DOJ"), United States Coast Guard ("Coast Guard"), United States Navy ("Navy"), United States Marine Corps ("Marines"), and the United States Department of Defense (collectively, "United States" or "Defendants"), by and through their attorneys file this Federal Rule of Civil Procedure 26(f) conference report and proposed discovery plan stating:

    1.    <u>Rule 26(f) Conference</u>: The Rule 26(f) conference was held, via telephone, on February 27, 2008, to discuss the nature and basis of the claims and defenses, settlement, initial disclosures, and a proposed discovery plan. Present at the conference were Steven B. Pollack, for Plaintiffs and David S. Gualtieri, Sarah Nelson, and David Fishback of the United States Department of Justice and Linda Wawzenski, Assistant United States Attorney, for Defendants. Plaintiffs filed their Rule 26(f) Initial Status Report and Proposed Discovery Plan (Dkt. 15) on March 10, 2008 ("Plaintiffs' Rule 26(f) Report").[1]

    2.    <u>Case Summary and Defenses</u>:    On January 31, 2008, Plaintiffs filed the First Amended Complaint (the "FAC") in this action and, on the evening of March 6, 2007, Plaintiffs filed a motion for preliminary injunction and for preliminary mandatory injunction with respect to several of the claims in the First Amended Complaint (the "PI Motion"). Counsel for

---

[1] At points too numerous to address individually, Plaintiffs' Rule 26(f) Report misstates, misrepresents and mischaracterizes statements made and positions taken by the United States. Accordingly, the United States objects to and disputes every such characterization of its position in Plaintiffs' Rule 26(f) Report.

Plaintiffs did not indicate Plaintiffs' intention to file a motion for preliminary injunction during the February 27, 2008, Rule 26(f) conference one week before. Consequently, the parties did not discuss the PI Motion or its rather obvious implications for scheduling in this case.

The First Amended Complaint brings claims under the purported authority of the federal question statute, 28 U.S.C. § 1331; the federal Clean Water Act, 33 U.S.C. § 1365; the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(A) & (B); the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9659(a) & (b); and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). Plaintiffs claim that the above-cited statutes provide an applicable waiver of the United States' sovereign immunity that allows Plaintiffs to sue the Defendants, all agencies of the United States. The PI Motion is premised on the purported authority of the Clean Water Act and RCRA.

Plaintiffs' allegations concern two distinct geographical areas and alleged activities. The first set of allegations pertains to prior activities of Defendant Coast Guard in connection with live-fire training exercises that occurred at various locations in the Great Lakes during 2006; the Coast Guard's proposal to establish safety zones for future such exercises in the Great Lakes (which the Coast Guard formally withdrew on January 5, 2007, 72 Fed. Reg. 520 (Jan. 5, 2007)); and unspecified Coast Guard training activities on the "East Coast." The second set of allegations pertains to an approximately 14.5 acre Federal Bureau of Investigation ("FBI") training facility and firing range, and an associated adjacent area in Lake Michigan, in North Chicago, Illinois ("FBI Range"). Plaintiffs allege that the property upon which the FBI Range is located was previously owned by Defendant Navy and is (and was) used by Defendants FBI, Navy, and Marines as well as other unidentified entities.

Count I alleges that the shooting of lead bullets into "this Nations' navigable waters" on "the East Coast (Atlantic Ocean)" by Defendant Coast Guard constitutes a current and "ongoing" violation of the Clean Water Act and that the alleged shooting of lead bullets into Lake Michigan by Defendants DOJ/FBI, Navy, and Marines at the FBI Range also violates the Clean Water Act. *See* FAC ¶¶ 14, 16, 34-35. Count II alleges that bullets "discharged through the Coast Guard live fire training exercises and from the [FBI Range]" constitute a regulatory violation of RCRA, FAC ¶ 37, and, as to the FBI Range only,[2] have created an "imminent and substantial endangerment" within the meaning of the RCRA citizen suit provision. Count III alleges that the

---

[2] *See* FAC ¶¶ 39-40, Prayer for Relief ¶ 3. Plaintiffs' Rule 26(f) Report, at 1, confirms that Plaintiffs allege "imminent and substantial endangerment" under RCRA as to the FBI Range only. Additionally, the PI Motion, makes no allegation of imminent and substantial endangerment or irreparable harm concerning Coast Guard live-fire training exercises.

aforementioned alleged activities have resulted in releases of hazardous substances in the Great Lakes within the meaning of CERCLA and that unspecified Defendants, together with other unidentified entities, are liable for "cleanup costs and compensation for damage to natural resources." Plaintiffs further seek, as to the FBI Range only, an order requiring the assessment and removal of past discharges. FAC ¶ 48; Plaintiffs' Rule 26(f) Report at 1. Finally, Count IV alleges that the above activities resulted in the discharge of lead into public drinking water supplies in violation of the Illinois common law of public nuisance and that Defendants are liable for damages in tort pursuant to the FTCA. Plaintiffs seek various forms of declaratory, injunctive, and monetary relief.

   The PI Motion seeks to enjoin, under the purported authority of the Clean Water Act, alleged unpermitted discharges of lead shot into Lake Michigan by the Coast Guard and from the FBI Range. The PI Motion also seeks, under the purported authority of RCRA, an order compelling the Defendants to perform a "wide-area preliminary assessment" of a portion of the Lake Michigan lakebed adjacent to the FBI Range.

   The United States will move to dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b) because this Court lacks subject matter jurisdiction over all of the claims in the First Amended Complaint. The United States also will oppose the PI Motion. As the United States has just received the PI Motion, it has not yet identified arguments it may raise in opposition beyond the jurisdictional defenses it will raise in its motion to dismiss.

   The following is a summary of some of the arguments that the United States anticipates raising in its motion to dismiss.[3/] As to Count I, this Court lacks subject matter jurisdiction under the Clean Water Act citizen suit provision, 33 U.S.C. § 1365(a)(1), because it is a jurisdictional prerequisite that Plaintiffs make a good faith allegation that the alleged Clean Water Act violations are ongoing or intermittent at the time of the complaint. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 64 (1987). Plaintiffs have not sufficiently alleged ongoing Clean Water Act violations by the Coast Guard on the "East Coast (Atlantic Ocean)" and have failed to provide the statutorily-required notice as to any such alleged violation. Even if the Coast Guard were properly notified of such a violation on the "East Coast (Atlantic Ocean)" and the violation were properly alleged, this Court is the improper venue. 33 U.S.C. § 1365(c)(1) (action to be brought "only in the judicial district in which such [discharge] source is located").

---

[3/]The United States continues to research its motion to dismiss and, therefore, may identify additional defenses.

As noted, there are *no ongoing* live-fire training exercises being conducted by the Coast Guard on the Great Lakes, and the First Amended Complaint does not allege as much.

Nor does the First Amended Complaint contain factual allegations to support Plaintiffs' claim that lead bullets are currently being discharged, or are reasonably anticipated to be discharged, from the FBI Range into Lake Michigan. The motion to dismiss will explain that all firearms discharges at the FBI Range are directed at training targets situated in front of a 25-foot high earthen berm that is designed to trap all discharged bullets. As was explained in a 1979 Federal Register notice, "to accommodate the current [i.e., FBI] training and practice routine," the Army Corps of Engineers eliminated some safety measures in the designated safety zone in Lake Michigan adjacent to the FBI Range (*see* 33 C.F.R. § 334.830), noting that all gun discharges are intended to impact the berm at the FBI range and "not impact into the lake." *See* 44 Fed. Reg. 66,213 (Nov. 19, 1979).

The RCRA citizen suit provision does not afford this Court subject matter jurisdiction over any of Plaintiffs' RCRA claims in Count II. Pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604, and related legal authorities the FBI has initiated response actions as the lead agency at the FBI Range, including by performing a preliminary environmental site assessment in 2006 and conducting analytical sampling beginning in September 2007. But for narrow exceptions not applicable here or alleged to apply in the First Amended Complaint, Section 113(h) of CERCLA, 42 U.S.C. § 9613(h), contains a "blunt withdrawal of federal jurisdiction" for challenges to response actions until those response actions are complete. *North Shore Gas Co. v. EPA*, 930 F.2d 1239, 1244 (7th Cir. 1991); *Pollack v. Dept. Of Defense*, 507 F.3d 522 (2007) ("the upshot of § 113(h) is that private attorneys general [*e.g.*, citizen groups] must wait until a cleanup is finished before rushing to court"). Plaintiffs' claims for specific injunctive relief in the First Amended Complaint, as well as Plaintiffs' request for an order compelling a "wide-area preliminary assessment" at the FBI Range in the PI Motion, purport to dictate specific response actions at the FBI Range or otherwise will interfere with the FBI's response action and, thus, clearly constitute a prohibited challenge to the FBI's ongoing response actions.

Furthermore, as to both the FBI Range and the Coast Guard training exercises, the First Amended Complaint does not allege a "permit, standard, regulation, condition, requirement, prohibition, or order" under RCRA that any Defendant is currently violating. 42 U.S.C. § 6972(a)(1)(A); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 57, n.2 (1987) (RCRA citizen suit provision has "identical language" to Clean Water Act's as to the requirement of ongoing or intermittent violation). Even if the First Amended Complaint had identified and alleged an ongoing or intermittent violation of a RCRA requirement, as is required

by 42 U.S.C. § 6972(a)(1)(A), this Court lacks subject matter jurisdiction insofar as "spent shot and target fragments do not . . . fall within the regulatory definition of 'solid waste' under RCRA." *Long Island Soundkeeper Fund v. New York Athletic Club*, 1996 WL 131863, *9 (S.D.N.Y. 1996); *see also* preamble to EPA's Military Munitions Rule, 62 Fed. Reg. 6621, 6628 (Feb. 12, 1997) ("regulatory jurisdiction does not apply to products that are deposited . . . in their ordinary manner of use").[4]

This Court lacks subject matter jurisdiction over the Count III CERCLA claims with respect to the FBI Range in light of CERCLA Section 113(h)'s bar to response action challenges discussed above. Additionally, Plaintiffs have failed to identify an applicable waiver of the United States' sovereign immunity because they have not alleged that the Defendants have violated a substantive "standard, regulation, condition, requirement, or order" of CERCLA as required by the CERCLA citizen suit provision. 42 U.S.C. § 9659(a)(1). Plaintiffs have not alleged any failure of the Defendants to perform a non-discretionary duty to support a claim under the other prong of the CERCLA citizen suit provision, 42 U.S.C. § 9659(a)(2). Nor have Plaintiffs alleged that they have incurred any response costs, which is a necessary element to establish liability under CERCLA Section 107(a). 42 U.S.C. § 9607(a); *Environmental Transp. Sys. v. ENSCO, Inc.*, 969 F.2d 503, 506 (7th Cir. 1992). Furthermore, Plaintiffs' claims for natural resource damages under CERCLA are not cognizable, as CERCLA authorizes recovery of natural resources damages only by governmental entities (*i.e.,* "trustees"), not private citizens. 42 U.S.C. § 9607(f)(1); *Nat'l Ass'n of Mfrs. v. Dep't of Interior*, 134 F.3d 1095, 1113-14 (D.C. Cir. 1998) ("CERCLA does not permit private parties to seek recovery for damages to natural resources held in trust by the federal, state or tribal governments"). Plaintiffs are not trustees and plainly have no right whatsoever to seek to recover natural resource damages.

This Court additionally lacks jurisdiction over the Clean Water Act, RCRA and CERCLA claims in Counts I-III against the Department of Defense because Plaintiffs failed to provide the statutorily-required notice to the Department of Defense. The Plaintiffs also lack constitutional standing to bring some or all of their claims in Counts I-III under the principles articulated in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

With regard to Plaintiffs' FTCA claims in Count IV, the Court lacks subject matter jurisdiction because Plaintiffs have failed to allege that they have exhausted their administrative

---

[4] One exception, not applicable here, is where the shot and debris meet the regulatory definition of "hazardous waste" and are collected and disposed of or treated. We note in this regard that the United States is evaluating potential additional defenses, including the applicability of the requirements of the Military Munitions Rule, to which the PI Motion refers.

remedies by filing an administrative claim with the appropriate federal agency as is required by the FTCA. 28 U.S.C. § 2675(a). After due inquiry, no Defendant has identified an administrative claim filed by either Plaintiff. Congress has not waived the United States' sovereign immunity for cases in which a claimant fails to exhaust administrative remedies, and therefore federal courts lack subject matter jurisdiction. *See, e.g., McNeil v. United States*, 508 U.S. 106, 112 (1993).

       3.       <u>Settlement</u>: The parties discussed prospects for settlement of Plaintiffs' claims. The United States believes that it is premature to discuss settlement in light of the significant jurisdictional issues presented above.

       4.       <u>Defendants' Statement Regarding Discovery Needed</u>: Depending on which claims, if any, remain after the Court decides the United States' motion to dismiss, the Defendants anticipate seeking fact discovery related to the factual basis for Plaintiffs' constitutional standing as well as the factual basis for allegations in the First Amended Complaint concerning, *inter alia*, an ongoing violation of the Clean Water Act and RCRA, violations of the substantive requirements of CERCLA and RCRA, the presence of an "imminent and substantial endangerment" created by Defendants' activities, the Plaintiffs' status as a governmental "trustee" under CERCLA, and evidence that Plaintiffs have incurred recoverable response costs under CERCLA. The Defendants anticipate serving written discovery and, as appropriate, deposing Plaintiff Pollack, members of Plaintiff Blue Eco Legal Council, and some or all of the individuals likely to have discoverable information identified in Plaintiffs' Rule 26(a)(1) initial disclosures or responses to Defendants' discovery requests. With regard to expert discovery, the Defendants anticipate serving disclosures from several expert witnesses. The Defendants further anticipate that the Plaintiffs will serve several expert disclosures. The Defendants will depose all testifying experts identified by the Plaintiffs.

       5.       <u>Considerations Concerning Privileged and/or Trial Preparation Materials, and Electronically Stored Information</u>: The parties discussed issues pertaining to privileged and/or trial preparation materials, and electronically stored information and did not reach any specific conclusions as to these issues.

       6.       <u>Limits on Discovery</u>: Discovery limits to be governed by the Federal Rules of Civil Procedure and local rules.

       7.       <u>Amendment of Pleadings and Joinder of Parties</u>: To be governed by the Federal Rules of Civil Procedure and local rules.

       8.       <u>Defendants' Proposed Discovery Plan and Motion Schedule</u>: The Court lacks subject matter jurisdiction over this case. The United States' motion to dismiss will raise

significant questions about this Court's jurisdiction that should lead to the dismissal of the First Amended Complaint and denial of the PI Motion. For this reason, the United States believes that there should be no discovery prior to the Court's decision on the motion to dismiss. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("'Without jurisdiction, the court cannot proceed at all in any cause.'") (quoting *Ex parte McCardle*, 7 Wall. 506 (1868)). Even if the Court were to grant the motion to dismiss only in part, the scope of the case, the agencies involved, and the extent of discovery, could be reduced considerably. The just-filed PI Motion presents still greater uncertainty about the contours of this case going forward and the need for discovery.

As the First Amended Complaint names five separate federal agencies as Defendants, raises two sets of allegations concerning separate and unrelated agency operations, and makes allegations dating back to 1918, discovery in this case will necessarily be complex, time-consuming, and will impose a comparatively greater burden on the United States. Demonstrating the necessity of the rule in *Steel Co.*, the United States has not yet even responded to the First Amended Complaint, yet Plaintiffs served extensive discovery as soon as permissible under the rules and categorically have refused to consider *any* request by the United States for a reasonable extension of the 30-day response deadlines. *See* Mar. 7, 2008 letter from counsel for Plaintiffs to counsel for Defendants, attached as Exhibit 1. Taken together with the just-filed PI Motion, such tactics appear intended to foster a false sense of urgency about Plaintiffs' claims[5] and to prejudice the United States.

After first attempting to serve discovery prior to the parties' February 27th Rule 26(f) conference, contrary to the timing restriction in Rule 26(d), Plaintiffs served document requests and a request for entry upon land on February 28, 2008, and 58 requests to admit on March 3, 2008. Plaintiffs' request for a site inspection at the FBI Range demanded such inspection on March 15 (a Saturday) or March 17. However, pursuant to Federal Rule of Civil Procedure 34(b)(2)(A), the United States is allowed 30 days (until April 2, 2008) to respond to Plaintiffs' request for a site inspection in the first place. By letter dated March 6, 2008, attached as Exhibit 2, the United States informed Plaintiffs of Rule 34's timing requirements, identified numerous practical objections to the requested date, and encouraged discussion between the parties to identify a mutually agreeable date and other conditions of the site inspection (as this is an

---

[5] On this point, we note that the FBI Range has been in use since 1918 and current discharges are into an earthen berm, no Coast Guard live-fire training exercises in the Great Lakes are occurring or are imminent, and the PI Motion comes nearly two months after Plaintiffs filed the initial complaint on January 15, 2008.

operating rifle range). Plaintiffs responded in its March 7, 2008, Exhibit 2, by again demanding a site inspection on March 17, 2008. The United States intends to respond to the request for site inspection by April 2, 2008, as required by Rule 34.

Additionally, Plaintiffs' February 28th request for documents and some of Plaintiffs' requests to admit expressly span a period dating back to 1918. Responding to such requests, to the extent they are not otherwise objectionable, will require a search by each agency for responsive documents in any of several Federal Records Centers, which are administered by the National Archives and Record Administration and are the repository of many older agency files. Experience has shown that such document searches are involved, complex, time-consuming, and resource-intensive. In its letter of March 6, 2008, the United States expressed these concerns (and others), requested an extension to respond to Plaintiffs' discovery requests, and expressed its willingness to provide readily accessible documents on a "rolling basis." *See* Exhibit 1. Plaintiffs' counsel refused to make the accommodation requested by the United States, responding with his belief that the United States should "devote sufficient resources to this project and I will not accept delays premised on the amount of work this will take." *See* Exhibit 2.

Finally, we note that during the Rule 26 conference, the parties discussed the United States' position that discovery in this case should not commence until after the Court decides the United States' motion to dismiss. Plaintiffs' counsel did not agree at that time to this approach, but indicated that he may be amenable to jointly proposing a postponement of discovery if the United States agreed to produce some documents prior to filing its motion to dismiss and prior to the parties' exchange of initial disclosures. In its March 6, 2007 letter, Exhibit 1, the United States attempted to further that dialogue and reach agreement on a discovery schedule with Plaintiffs by, among other things, identifying and offering to provide extensive documentation to Plaintiffs even before filing its motion to dismiss and serving its Rule 26 initial disclosures. Additionally, and even though the United States believes that discovery should not commence at all until after the Court decides the motion to dismiss, the United States proposed a specific deadline for the parties' Rule 26 initial disclosures. For the reasons set forth above, the United States objected during the Rule 26 conference to providing its Rule 26 initial disclosures according to the default deadline in Rule 26(a)(1)(C) that Plaintiffs advocate. The Unites States believes that the Court should establish the deadline for initial disclosures as proposed below.

As set forth in proposed discovery plan below, the Court should defer discovery until after it decides the United States' motion to dismiss. The parties specifically discussed this approach during the Rule 26 conference. But for the issues of when the parties are to exchange

Rule 26 initial disclosures and when discovery commences, as to which the parties disagree, the parties propose the same discovery plan schedule. *See* Plaintiffs' Rule 26(f) Report at 5.

**Defendants' Proposed Discovery Plan**

| | | |
|---|---|---|
| 1. | Service of Rule 26(a) initial disclosures: | May 12, 2008 |
| 2. | Commencement of fact discovery: | date motion to dismiss ("MTD") is decided |
| 3. | Fact discovery cut-off (except for admissions): | 9 months after MTD decided |
| 4. | Expert discovery: | |
| | a.  Plaintiffs' expert disclosures: | 10 months after MTD decided |
| | b.  Defendants' expert disclosures: | 60 days after Plaintiffs' expert disclosures |
| | c.  Expert discovery cut-off (including completion of depositions): | 60 days after Defendants' expert disclosures |
| 5. | Dispositive motions cut-off: | 60 days after expert discovery cut-off |
| 6. | Request for admission cut-off: | 30 days before final pre-trial conference |
| 7. | Final Pre-trial conference: | to be scheduled by Court |
| 8. | Trial: | to be scheduled by Court |

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources
Division

   /s/ David S. Gualtieri
DAVID S. GUALTIERI
Environmental Defense Section
P.O. Box 23986
Washington, DC 20026-3986
(202) 514-4767; (202) 514-8865 (fax)
David.Gualtieri@usdoj.gov


PATRICK J. FITZGERALD
United States Attorney

/s/Linda A. Wawzenski
LINDA A. WAWZENSKI
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-1994
linda.wawzenski@usdoj.gov

## CERTIFICATE OF SERVICE

     I hereby certify that on the date below the foregoing DEFENDANTS' RULE 26(f) CONFERENCE REPORT AND PROPOSED DISCOVERY PLAN and the Exhibits thereto were filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


Dated: March 10, 2008                               /s/ David S. Gualtieri
                                                                Counsel for the United States