**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Steven B. Pollack and | ) |
| Blue Eco Legal Council, | ) |
| | ) |
| Plaintiffs, | ) Case Number: 08-cv-320 |
| | ) Assigned Judge: Guzman |
| v. | ) Magistrate Judge: Brown |
| | ) |
| United States Department of Justice, | ) |
| United States Coast Guard, | ) CWA, RCRA, CERCLA, AND |
| United States Navy, | ) PUBLIC NUISANCE FTCA CASE |
| United States Marines, and | ) |
| United States Department of Defense, | ) |
| | ) |
| Defendants. | ) |

### PLAINTIFFS Fed. R. Civ. P. 26(f) PROPOSED DISCOVERY PLAN AS TO JURISDICTIONAL FACTS

Plaintiff proposed the below jurisdictional discovery schedule and conferred via telephone with Defendants' attorneys David Gualtieri and Jennifer Olkiewicz on March 18, 2008.

While several details were agreed to, including redacting personally identifying information of FBI agents from documents, and changing the scheduled status to accommodate Defendants' flight schedule, several fundamental items were not agreed to.

### Conducting a Test at the FBI Range Using Tracer Rounds

Defendants have put the fact of ongoing violations at issue, arguing that the berm in place is so effective that no bullets can enter Lake Michigan. According to the argument that they plan to present in a motion to dismiss, Plaintiffs can only bring suit for ongoing violations and not wholly past violations. In Defendants' prior conference report they offered the following as the basis of this claim that any violations are wholly past:

> As was explained in a 1979 Federal Register notice, "to accommodate the current [i.e., FBI] training and practice routine," the Army Corps of Engineers eliminated some safety measures in the designated safety zone in Lake Michigan adjacent to the FBI Range (*see* 33 C.F.R. § 334.830), noting that all gun discharges are intended to impact the berm at the FBI range and "not impact into the lake." *See* 44 Fed. Reg. 66,213 (Nov. 19, 1979).

In fact, the very next sentence states "only an errant round or ricochet would impact into the lake." See attached Exhibit 1, 44 Fed. Reg. 66,213.  The document also orders the posting of guards to watch over the lake while firing is in progress with authority to shut down training. Defendants have selectively quoted this document regarding the intent of the berm whereas a full review of the document shows that there are in fact ongoing violations in the form of errant rounds and ricochets entering Lake Michigan in violation of the Clean Water Act.  This strict liability federal statute does not concern itself with intent and contains no de minimis exception so that any errant rounds or ricochets are violations. Regardless of the foregoing, Plaintiffs also contend that the violations are not de minimis because, according to their expert, ricochets are common events.

In our conference call, Defense counsel claimed that this was not an admission of violation by the Army Corps of Engineers, and that neither is the language of the current federal regulation stating that when firing is in progress and the warning flags are flown "**it will indicate that firing is in progress and that the waters in the danger zone are subject to impact by rounds missing or ricocheting off the impact berm**." See 33 C.F.R. § 334.830

In order to succeed on a motion to dismiss, Defendants will have to argue that Plaintiffs can show no set of facts proving ongoing violations.  In light of the above pronouncement by the Army Corps of Engineers, current federal regulations governing the Lake Michigan impact area, and vicarious admissions by Defendants in Compl. Ex. G, Plaintiffs cannot see how Defendants can make such a filing without violating Rule 11 and subjecting themselves to sanctions.

If Defendants insist on asserting no violation can occur based on the berm design Plaintiffs demand a test of the berm by their expert using tracer ammunition which will conclusively prove that bullets ricochet into Lake Michigan in violation of the Clean Water Act.

### Viewing Firearms Training Operations at the FBI Range

Plaintiffs requested viewing training operations as they occur at the range.  Defendants objected on the ground that FBI policy precludes viewing undercover agents by outsiders and that special tactics can likewise not be viewed.

We had proffered 13 available working days between now and the end of April when Defendants' response to our Motion for Preliminary Injunction is due, along with either their motion to dismiss or answer. Defendants chose two days, March 31 and April 4 but said we still

could not view ongoing training because of FBI policy. Instead they offered to give a demonstration of the various firearms by a qualified individual.

Plaintiffs do not agree this is of like value to their discovery needs. The effectiveness of the berm changes depending on the type of fire being conducted and the qualification of the shooters. That varies at this range from qualified individuals re-qualifying all the way down to civilian VIP shooters with machine guns. See Exhibit 2 ("After the Bears took live ammo target practice using FBI weapons, including machine guns, the players and agents retreated to a picnic area about 200 yards away where beer was served."); Exhibit 3 (FBI Day at the Range, Chicago Crime Commission).

Plaintiffs assert that such automatic weapons fire represents the highest likelihood of errant rounds and ricochets and therefore ask to view active training by typical FBI personnel and have no desire to view tactics or secret agents. We therefore request viewing six rank and file FBI personnel conducting a course of instruction using M-16 automatic weapons and 5.56mm (hardball) ammunition. We also request the right to film the berm impact area during weapons fire (without capturing any identifiable views of the personnel)

### Timeframe for Discoverable Documents

Based on this Court's ruling that discovery will be limited to the jurisdictional facts, Plaintiffs revised their document requests to 1979 through present. This reflects Defendants' reliance on the Army Corps of Engineers 1979 pronouncement that "all fire is intended to impact into the berms and not impact the lake." see Def. First Report of Rule 26(f) Planning Meeting, Docket at 16.

Plaintiffs seek documents from this time period to test the assumptions and facts between the pronouncement and the present. One way is to calculate the lead discharged and compare that to the lead recovered during berm maintenance and reclamation activities of the same period. Defendants claim this would be impossible and refuse to give documents going back any more than a few years.

The 29 years of documents requested is a fraction of the 90 years Defendants have been discharging munitions into Lake Michigan and is not an undue burden in light of the public welfare at stake.

**Sign-in logs/Range Manifests/Activity logs**

Plaintiffs requested sign-in logs and range manifests, documents expected to contain the names and organizations of everyone who comes onto this secure facility and the types of training they conducted. Defendants claim that there are no documents called range manifests and that only the shooting activities of the FBI agents are in the sign-in logs maintained by the FBI.

They claim that the activities of other federal agencies, state police, and municipal police are not recorded and maintained by the FBI. Plaintiffs do not believe that there is no record maintained by the FBI listing all visitors to the range and their activities. This appears to be an attempt to shield Plaintiffs from discovering other parties who may be added to this suit. Although Defendants did say they could get the VIP records from different sources such as the VIP program correspondence, it is likely some calendar of activity exists that would put the VIP use in context of the overall range use.

The jurisdictional relevance is three-fold. First, we intend to show that the 1979 assumption by the Army Corps of Engineers, that this would be an FBI training facility, has not been borne out. Plaintiffs question if a 25 foot high berm is as effective with civilian VIP shooters who may be first time users of those particular weapons as it is with FBI agents.

Second, Defendants state they intend to have the Department of Defense removed as a defendant even though Plaintiffs gave notice to the Navy, Marines, the President, and their counsel, the Department of Justice. This brings up a common issue of the Unitary Executive theory that Defendants use to their advantage but ignore at other times such as here.

The declaratory and injunctive relief sought, ideally, would be against the President for the discharge of lead bullets into the waters of the United States. If, however, Defendants are going to attempt to limit the reach of judicial relief to only those agencies named then Plaintiff must be given an opportunity to discover all agencies using this range to include them in this Complaint. This requires new 60 and 90 day notices of intent to sue before bringing them into this suit so the sooner this information is discovered the quicker this case can be completed.

Finally, Plaintiffs believe that the state and municipal police training results in the import of outside ammunition that needs to be accounted for in comparing total discharges to total berm recovery.

## Ammunition Transaction Records

Plaintiffs requested, and Defendants denied access to range ammunition records. Defendants claim the following:

> The FBI has specific safety and security concerns with regard to the requested ammunition records (item 2.c) that we must discuss, particularly insofar as public disclosure of such records could reveal or suggest the amount and value of ammunition that is stored at the facility and contribute to a threat of theft or vandalism. There are other, less sensitive means to estimate the type and volume of ammunition used at the range that we can discuss.

This is not a legitimate basis for denying access to relevant documents that Plaintiffs intend to use for multiple purposes including calculating total volume discharged (to be compared with total lead reclaimed) and for knowing the types and volume of ammunition fired so as to understand the various factual scenarios affecting this berm. Such concerns reflect more on the FBI's ability to protect its own facility.

Defendants ultimately claimed that such a "material mass balance" was impossible to calculate from their records. Plaintiffs would like to make their own determination after reviewing these documents.

## Discovery from Plaintiffs on Jurisdictional Facts

Defendants feel they are also entitled to discovery of jurisdictional facts from Plaintiffs.

> The United States will assert in its motion to dismiss that the allegations in the First Amended Complaint do not establish the individual constitutional standing of Plaintiff Steven B. Pollack or the constitutional organizational standing of Plaintiff Blue Eco Council. Since the Plaintiffs have the burden of production on this issue, we look to Plaintiffs to disclose all facts they intend to rely upon to demonstrate their standing to bring each of the claims in the First Amended Complaint.

If Defendants don't have a basis for challenging Plaintiffs standing at this stage then they should wait until after trial and file a motion for summary judgment. The real issue here is that if Defendants cannot dispose of the entire case with the facts they have then discovery should not have been held in the first place. This is an attempt to bootstrap the facts they need to argue that their motion to dismiss disposes of the entire case and therefore stop discovery generally.

It is Defendants motion to dismiss based on facts that will be produced by affidavit, and the unfairness to Plaintiffs, that required discovery as to these jurisdictional facts. If Defendants are allowed discovery over facts they need for their motion to dismiss then general discovery should

5

go forward for everyone. This is especially so on issues of continuing violations by the Coast Guard on the East Coast. If Defendants ultimately challenge Plaintiffs' organizational standing to consider these East Coast violations as ongoing from the prior Great Lakes violations then this case may need to expand.

In other words, Plaintiffs had a good faith basis for alleging ongoing violations by the Coast Guard because they admitted as much by press release in Compl. Ex. E.  Defendants are now claiming that is a whole separate issue and not one that Plaintiffs organization can reach because of its small membership.  That would depend on the location of Coast Guard training on the East Coast and the proximity to members of Plaintiffs organization. Such facts will come out in discovery which is now being held by this Court.  If these also become jurisdictional facts then essentially the entire case becomes jurisdictional.

This inconsistency would be stopped by denying Defendants discovery and their not filing a motion to dismiss as to facts they are not sure about at this point.

### Plaintiffs Proposed Discovery Plan as to Jurisdiction Facts
(areas of disagreement highlighted)

1. Site Inspection
   a. Observe course of instruction for automatic weapons fire training ½ day
      i. Review all sign-ins, logs, and record keeping associated with that days training.
      ii. Review ammunition transaction records associated with that days training
   b. Non-invasive inspection of the grounds during ½ day when no training activity is occurring for;
      i. observation
      ii. photographs
      iii. measuring distances
   c. Test fire carbine weapon at dusk using tracer ammunition to visually observe flight path of bullets after impacting berm. 1hr range time.
   d. Plaintiffs' Expert's Available Dates for Property Inspection:
      i. March 24, 25, and 31
      ii. April 1, 2, 3, 4, 14, 15, 16, 17(after noon), 18, and 28
2. Request for Documents – Due April 25, 2008
   a. Range Manifests- indicates the nature of training and which dates they occurred in order to quantify total discharges. 1979 to present
   b. Sign-in logs – Indicates volume of external ammunition expended by non-FBI users allowing us to calculate, in conjunction with recorded discharges, the total volume of lead discharged at the facility and compare with berm maintenance records. Also indicates frequency of use by amateur shooters outside the 1979 ACOE assumptions of the intended use of the facility. 1979 to present

    c. Ammunition transaction records – Indicates how much of what kind of ammunition was expended on what days. 1979 to present.
    d. Berm maintenance records including reclamation and recycling. 1979 to present.
    e. Casualty incident reports and mishap reports and other documents pertaining to gunshot injuries or deaths at the North Chicago facility. Shows bullets not captured by berm as intended. 1979 to present.
    f. Copies of all Standard Operating Procedure (SOP) documents for the following course of fire, 1979 to present, at the North Chicago facility;
      i. Pistol;
      ii. Rifle;
      iii. Automatic weapons;
      iv. Shotgun; and
      v. Sniper
    g. All complete and un-redacted documents identified as relevant in Attachment 2 of Defendants' March 6, 2008 letter to Plaintiffs. See below for list of documents and explanations of relevancy.
    h. All documents pertaining to Defendants initiation and performance of a CERCLA cleanup action for the North Chicago Range; all documents referenced on page 4 of Defendants' Rule 26(f) Conference Report pertaining to a CERCLA cleanup; all correspondence with the lead regulatory agency for this CERCLA cleanup; and all documents pertaining to the Non-National Priorities List determination of the site thereby allowing the FBI to be the lead agency.

**Documents listed in Attachment 2, Defendants' March 6, 2008 Letter to Plaintiffs**

<u>Real Estate Appraisal and Related Studies (4/25/86) and transmittal cover letter (5/14/86)(including all exhibits)</u>. Relevant as to violations at range and then existing conditions that continue to present making ongoing violations likely.

<u>Assess the Environmental Contamination and Consequence of Proposed Disposal of the Rifle Range (9/84) and related memoranda/correspondence.</u> Relevant as to violations at range and then existing conditions continuing to present making ongoing violations likely. Also relevant as to prior assessments and likelihood that current assessment will likewise yield no action under CERCLA.

<u>Survey Report of Executive Order 12512 Survey for North Range Firing Facility (9/22/87)</u>. Relevant as to prior assessments and likelihood that current assessment will likewise yield no action under CERCLA.

<u>TRS Range Services, Documentation of Lad Recovery at Firing Range (9/14/06)</u>. Relevant as to correlating range discharges with range recovery to test whether the berm is effecting as asserted.

<u>Transfer and Acceptance of Military Real Property (9/4/87) and Related GSA/Navy correspondence</u>. Not needed at as to limited jurisdictional fact discovery.

7

Navy/FBI Range Use Agreements (1979 and 1984). Relevant as to assumptions of range use by Army Corps of Engineers as compared to the actual use by civilians.

Deed for Range. Not needed at as to limited jurisdictional fact discovery.

Naval Energy and Environmental Support Activity, Initial Assessment Study of Naval Complex Great Lakes, Illinois (3/86) and related memorandum. Relevant as to violations at range and then existing conditions that continue to present making ongoing violations likely. Also relevant as to prior assessments and likelihood that current assessment will likewise yield no action under CERCLA.

Rogers, Golden & Halpern, Navy Initial Assessment Study, Naval Complex (NC) Great Lakes, Illinois (3/86). Relevant as to violations at range and then existing conditions that continue to present making ongoing violations likely. Also relevant as to prior assessments and likelihood that current assessment will likewise yield no action under CERCLA.

Documentation, including schematics, pertaining to National Environmental Policy Act (NEPA) Categorical Exclusion For, Construction of Federal Bureau of Investigation Shoot House (4/04). Relevant as to violations at range and then existing conditions that continue to present making ongoing violations likely.

Federal Register Notices regarding safety zones NPRM. Not needed.

Coast Guard Press Release (12/18/06). Not needed.

Message ALCOAST 263/06 – re: Revision to the Machine Boat Course (5/4/06). Not needed yet.

Message, ALCOAST 632/05 – re: Small Arms Testing and Training (12/22/05). Not needed yet.

Memorandum re: Live Fire Weapons Testing, Training Exercises and Operations (12/12/05). Not needed yet.

                Respectfully submitted,

March 20, 2008               /s/ Steven B. Pollack
                                Attorney for Plaintiffs
                                3390 Commercial Ave
                                Northbrook, IL 60062
                                847-436-9566