UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN B. POLLACK AND BLUE ECO LEGAL COUNCIL,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, UNITED STATES COAST GUARD, UNITED STATES NAVY, UNITED STATES MARINE CORPS, AND UNITED STATES DEPARTMENT OF DEFENSE,<br><br>    Defendants. | No. 08 C 320<br>Judge Guzman |

**DEFENDANTS' PROPOSED PLAN AND SCHEDULE
FOR FOCUSED DISCOVERY ON SUBJECT MATTER
JURISDICTION AND OBJECTIONS TO PLAINTIFFS' PROPOSAL**

**INTRODUCTION**

  This case was before the Court for an initial status conference and to hear Plaintiffs' Motion to Compel Property Inspection (Dkt. 17) on March 14, 2001. The Court set April 30, 2008, as the due date for the United States' motion to dismiss and opposition to Plaintiffs' Motion for Preliminary Injunction (Dkt. 13); entered a stay of discovery in this case; and denied Plaintiffs' Motion to Compel Property Inspection. *See* Mar. 14, 2001 Order, Dkt. 21. The Court made a single exception to its stay of discovery, and ordered the parties to prepare a plan and schedule for limited fact discovery as to the jurisdictional facts related to the arguments the United States will raise in its motion to dismiss. This filing contains the United States' proposal and also objects to Plaintiffs' demand for certain types of discovery, including: documents dating back to 1979 (even though the jurisdictional facts at issue pertain to "current" or "ongoing" activities at the FBI Range); a full inspection of the FBI Range; observation of actual FBI agent weapons training; and the nighttime firing of incendiary "tracer rounds" from an automatic machine gun at the FBI Range.

  As the United States explained in its Rule 26 Conference Report, its Motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1), will demonstrate that this Court lacks subject matter jurisdiction as to all claims in the First Amended Complaint and that the Plaintiffs lack constitutional standing to sue. Some of the bases for dismissal will be strictly legal, others will be based on facially insufficient allegations in the First Amended Complaint, and still others will be supported by the submission of jurisdictional facts or documents beyond those alleged in

the First Amended Complaint.  Such motions under Rule 12(b)(1) permissibly can rely on submitted facts that bear on the Court's subject matter jurisdiction.  Indeed, "the district court is not bound to accept as true the allegations of the complaint which tend to establish jurisdiction where a party properly raises a factual question concerning the jurisdiction of the district court to proceed with the action. The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."  *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir. 1979); *see also Rennie v. Garrett,* 896 F.2d 1057, 1057-58 (7th Cir. 1990) ("It is settled law that a federal court determining whether it has jurisdiction may look beyond the face of the plaintiff's complaint to resolve factual disputes.").  Ultimately, "where the jurisdiction of the court is challenged as a factual matter, the party invoking jurisdiction has the burden of supporting the allegations of jurisdictional facts by competent proof."  *Grafon Corp.,* 602 F.2d at 783.  Thus, Plaintiffs have the burden to establish this Court's subject matter jurisdiction over the claims in this case.

It is as to these "jurisdictional facts" only that the Court has allowed discovery.  The scope of discovery, therefore, is very narrow and is limited to factual issues bearing on this Court's jurisdiction that the United States puts in issue in its Motion to dismiss.  While we describe with more specificity below the subjects for focused discovery, the general topics as to which the United States anticipates presenting "jurisdictional facts" are: the sufficiency of the factual allegations as to an ongoing or continuous violation of the Clean Water Act ("CWA") or the Resource Conservation and Recovery Act ("RCRA) at the FBI Range necessary to establish jurisdiction over a citizen suit claim under the requirements of *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49 (1987); the existence of an ongoing response action at the FBI Range that bars Plaintiffs' claims under federal environmental laws pursuant to the requirements of CERCLA section 113(h), 42 U.S.C. § 9613(h); Plaintiffs' failure to provide to Defendant Department of Defense notice of Plaintiffs' intent to sue as to the FBI Range or the Coast Guard live-fire training exercises as required by the CWA, RCRA and CERCLA citizen suit provisions; Plaintiffs' failure to exhaust administrative remedies, by submitting an administrative claim to Defendants, before commencing a tort claim against the United States as required by the Federal Tort Claims Act, 28 U.S.C. § 2675(a); and Plaintiffs' lack of constitutional standing.

## ARGUMENT

On March 18, 2008, the parties exchanged proposals regarding the scope, plan and schedule for focused discovery on jurisdictional facts and followed those submissions with a more than one hour telephone conference.  The parties' draft proposals showed them to be in

agreement on a number of important points, including that discovery be limited to the exchange of documents; that the "jurisdictional facts" center around the issue of alleged ongoing violations and the existence of a qualifying response action at the FBI Range (and *not* as to the claims pertaining to Coast Guard live-fire training); and that whatever discovery is conducted be completed before the United States files its motion to dismiss. The parties also largely agreed on the subject areas of documents to be produced by Defendants and Plaintiffs (discussed in the United States' proposal *infra*). Ultimately, however, the parties could not agree on two points: the appropriate time frame of documents to be produced and Plaintiffs' proposed inspection of the FBI Range.

I. **PLAINTIFFS' INSISTENCE ON DOCUMENTS DATING BACK TO 1979 IS BEYOND THE SCOPE OF DISCOVERY ON JURISDICTIONAL FACTS AND IS UNREASONABLE**

On the matter of documents to be produced by the United States, the United States proposed to produce essentially all of the documents that Plaintiffs proposed. Where the FBI's documents, in fact, did not specifically match the requested document (for instance, the FBI does not keep "range manifests" as requested by Plaintiffs nor do FBI "sign-in logs" show the types of information that Plaintiffs assume), the United States offered to provide like documents or documents that contained similar information. As the jurisdictional issue before the Court will be whether Plaintiffs have adequately alleged a "continuous or intermittent violation," *Gwaltney*, 484 U.S. at 64, and because "the harm sought be addressed by the citizen suit lies in the present or future, not in the past," *id.* at 59, the United States offered to provide categories of documents relating to the layout, design, and operation of the FBI Range (*e.g.*, sign-in logs, information as to ammunition and weapons, and documents pertaining to the re-design of the ballistic backstop, or berm, in 2006) going back a period of one to three years. As another measure of compromise in order to reach agreement on a discovery plan, the United States also offered to provide certain specific documents that Plaintiffs requested, even though many of those documents are historical and are not relevant to the limited issues of jurisdictional fact.[1] Information concerning range operations over the past two years (January 2006 to present) is sufficient to establish the necessary facts concerning "current" or "ongoing" activities at the range as they pertain to alleged violations and will allow discovery to be completed expeditiously within the time allowed.

Plaintiffs, however, rejected the United States' offer and continued to insist that the United States produce documents going back to 1979 (nearly the entire period of the FBI's involvement with the range). Where the matter in issue pertains only to alleged *current* and

---

[1] In light of Plaintiffs' rejection of this offer, the United States will review those documents to determine which, if any, are relevant to the present limited inquiry and will produce all such responsive documents.

*ongoing* violations or the existence of *current* and *ongoing* CERCLA response actions at the FBI Range, 30-year old sign-in logs, ammunition purchase records, casualty incident reports, and the like are patently beyond the scope of the discovery allowed by the Court and are not "reasonably calculated to lead to the discovery of admissible evidence" as to this Court's jurisdiction over Plaintiffs' claims concerning *current* range operations that Plaintiffs allege constitute an ongoing violation of the CWA or RCRA. *See* Fed. R. Civ. P. 26(b)(1). Locating and producing such documents, if they even still exist, will be burdensome and time-consuming, rendering the request all the more unreasonable in light of the limited time available for this focused, limited discovery.

During the telephone conference and in their proposal, Plaintiffs contended that such historical information is necessary to compare the volume of lead bullets shot at the facility with the amount of material extracted from the ballistic backstop during maintenance activities. Plaintiffs apparently plan to perform a "material mass balance" of ammunition at the FBI Range, whereby the weight of all ammunition fired at the FBI Range between 1979 and the present would be subtracted from the weight of spent ammunition that has been reclaimed from the berm over the years. The difference, Plaintiffs surely will presume, winds up in Lake Michigan. Putting aside the practical impossibility, numerous imponderables, and gaps of logic related to such a task, any such analysis is, at best, a matter for expert discovery, would merely engender expert testimony (*i.e.*, opinion and not jurisdictional fact), would require the search for and production of extensive documentation, and plainly exceeds the limited scope of discovery on "jurisdictional facts." Moreover, that every bullet shot into the berm may not have been reclaimed from the berm says nothing about alleged ongoing violations of law. Accordingly, the Court should limit the time frame for the documents to be produced to January 2006 to present.

II.     **PLAINTIFFS' PROPOSED SITE INSPECTION EXCEEDS THE SCOPE OF THIS PHASE OF LIMITED DISCOVERY AND IS OTHERWISE IMPERMISSIBLE**

    A.    **The Court Should Not Allow Inspection of the FBI Range During this Phase of Limited Discovery.**

Once again, Plaintiffs have made extraordinary demands regarding an inspection of the FBI Range that disregard the unique nature of an active firearms training facility, do not conform to the Federal Rules of Civil Procedure and, in any case, far exceed the limited scope of discovery as to jurisdictional facts. Moreover, these extreme demands are at variance with the Court's denial of Plaintiffs' Motion to Compel Property Inspection. Let us first be clear: the FBI does not object to a reasonable inspection of the FBI Range, at the appropriate stage of this case, for appropriate discovery purposes under the federal rules, and subject to reasonable conditions

in light of the unique safety and security concerns attendant to this facility. However, we have not yet reached that stage of the litigation and may never, as the United States will move to dismiss the First Amended Complaint.

As described above and in the specific proposal below, documents to be produced by the FBI during this phase of limited discovery will provide Plaintiffs information on every facet of range operations relevant to this Court's jurisdiction, including as to the layout and physical characteristics of the facility, the manner in which firearms-related activities are conducted (including as to weapons and ammunition used), the entities that use the facility and its frequency of use, the characteristics and condition of the ballistic backstop, and reports of accidental discharges and other such events. Accordingly, in addition to being beyond the scope of discovery at this stage, a site inspection is cumulative, duplicative, concerns information available from other sources, is burdensome, and is an annoyance within the meaning of Federal Rule of Civil Procedure Rule 26(b)(2) and (c)(1). The Court should disallow it.

Because "entry upon a party's premises may entail greater burdens and risks than mere production of documents, a greater inquiry into the necessity for inspection would seem warranted." *Belcher v. Bassett Furniture Industries, Inc.*, 588 F.2d 904, 908 (4th Cir. 1978). Here, the inspection sought will unduly burden the FBI given the minimal benefit to Plaintiffs. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (discovery properly limited where "burden or expense of the proposed discovery outweighs its likely benefit"); *see also id.* (c)(i) (court may protect party from "annoyance, . . . oppression, or undue burden or expense"). The FBI Range is used to train and qualify thousands of FBI Special Agents and is the sole law enforcement firearms training range for the FBI Chicago Division, the fourth largest field division of the FBI. The facility is also critical to training and qualifying state and local police officers and other federal military and law enforcement personnel throughout the region, as it is also the only non-fee range in the region for such purposes. Given this intense usage and demands on the range's time, the schedule for the range is established up to a year in advance to ensure that the FBI can accommodate itself and as many other departments and agencies as possible.

By way of illustration, the current schedule for March-April 2008 is as follows:

| | |
|---|---|
| March 24 - 28 | FBI First Quarter Qualification Shooting, SWAT Class |
| March 29 - 30 | Great Lakes Police Department ("PD"), North Chicago PD |
| March 31 - April 4 | FBI Skill Building, Glock Transitioning Classes |
| April 5 - 6 | Rosemont PD |
| April 7 - 11 | FBI Second Quarter Qualification Shooting, Chicago PD, Rosemont PD |
| April 12 - 13 | Great Lakes PD |
| April 14 - 18 | Basic SWAT School, Round Lake Beach PD |

|  |  |
|---|---|
| April 19 - 20 | Rosemont PD |
| April 21 - 25 | Zion PD, Chicago PD, National Academy, SWAT training |
| April 26 - 27 | Lake Villa PD, Evanston PD |
| April 28 - May 2 | FBI Springfield SWAT class, Illinois Department of Natural Resources |

Each year, the FBI denies some training requests because the need for law enforcement weapons training is so intense. As the above schedule shows, an inspection on any of the dates requested by Plaintiffs would displace or substantially interrupt critically-needed law enforcement training. Not disrupting such important law enforcement functions clearly outweighs Plaintiffs need for duplicative discovery that is beyond the scope of this limited discovery phase of the case. Thus, Plaintiffs' request for an inspection of the FBI Range should be denied, without prejudice.

      **B.    If the Court Allows An Inspection, It Should Be Limited in Light of FBI Policies Regarding Safety and Security and Not Include Firing of "Tracer Rounds" as Requested by Plaintiffs.**

Plaintiffs' request for a site inspection raises a number of safety and security issues that would have to be addressed. Thus, if the Court decides to allow the inspection, it should limit its scope as authorized by Rule 26. Two aspects of Plaintiffs' of Plaintiffs' proposal are particularly problematic: observing actual FBI agent training and firing incendiary tracer rounds from an automatic weapon.

<u>Observing FBI Agent Training</u>: Agents that train at the FBI Range include many agents currently assigned to undercover and surveillance matters. Moreover, range training activities include training in specialized law enforcement techniques that are considered law enforcement sensitive and are used, for example, in counterterrorism and counterintelligence operations. This is especially true for SWAT training, which is scheduled to occur on many of the dates that Plaintiffs proposed. In order to protect operational personnel and the confidentiality of certain law enforcement techniques, FBI policy at this facility is to allow only law enforcement personnel to be present at the facility during training and other law enforcement exercises. The FBI has raised these issues with Plaintiffs on multiple occasions, and Plaintiff has refused to scale back its request or make any accommodation. Accordingly the FBI objects to, and the Court should not allow, Plaintiffs' request to observe FBI training and other activities at the FBI Range.

In an effort to resolve this issue and to accommodate Plaintiffs, the FBI offered as an alternative to perform a demonstration shoot by an FBI agent, representative of agents that train and qualify at the facility, performing typical training activities using weapons and ammunition typically used at the FBI Range. Regarding typical activities at the range, there is no functional

difference between observing one individual, as opposed to several, shooting at targets in the same manner as actual training and with the types of weapons and ammunition that typically are used.  Given the extremely focused discovery at this stage, the demonstration shoot offered by the FBI will sufficiently acquaint Plaintiffs with typical range operations without implicating the safety and security concerns discussed above.  Plaintiff rejected this offer and insisted on observing actual training and instruction activities.

<u>Firing Tracer Rounds</u>:  The FBI also objected to Plaintiffs' proposal to shoot "tracer ammunition" from a "carbine weapon" during the inspection.  Plaintiffs insist on their right to do this.  This request clearly exceeds the limited scope of "jurisdictional facts," the scope of site inspection allowed under Rule 34(a), and the type of discovery that is permissible under Rule 26, as Plaintiffs seek to perform an operation at the FBI Range, using a weapon and type of ammunition, that is neither typical nor representative of FBI operations at the range.  Rather than inspecting, testing or sampling the property as they find it and as contemplated by the discovery rules, *see* Fed. R. Civ. P. 34(a)(2), Plaintiffs instead seek to *create* an extraordinary situation at the FBI Range that is not at all representative of typical conditions.

Tracer rounds are ammunition with hollowed compartments containing pyrotechnic charges.  Critically, tracer rounds are *not* used at the FBI Range and, because of their special purpose and design, they behave differently than the FBI-approved ammunition that *is* used at the facility.  Thus, any observation based on the use of a tracer round would be wholly unrepresentative of current operations at the range and, consequently, irrelevant.  Moreover, tracer rounds would not reliably show the "the flight path of bullets after impacting [the] berm" as Plaintiffs posit because, among other reasons, the pyrotechnic charge from such rounds often burns off too quickly to see any after-impact flight path.  Furthermore, Plaintiff proposes to fire tracer rounds from an automatic weapon, presumably in full automatic mode.  Again, this is totally unrepresentative of FBI Range practice, as fully automatic weapons fire occurs very infrequently for demonstration purposes only and, even then, by only the most experienced law enforcement personnel.  Unrepresentative as it is, Plaintiffs' tracer round experiment is not "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Courts have disallowed similar requests for tests on or using the owner's property that deviate from standard operations.  *See, e.g., In re Air Crash Disaster at Sioux City, Iowa*, 1991 WL 147365, 2 (N.D. Ill. 1991) (denying requested test by plaintiff on defendant's DC-10 because the "request is unduly burdensome and may indeed prove dangerous. Rule 34 does not require a party to conduct tests on machinery according to the opposing party's specifications.") (citations omitted); *Micro Chemical, Inc. v. Lextron, Inc.,* 193 F.R.D. 667, 669 (D. Colo. 2000) (denying

plaintiff's request to "alter [defendant's] machine by substituting parts supplied by [plaintiff] in place of standard parts provided in the ordinary manufacture of the machine").

Finally, not only would Plaintiffs' "tracer round" experiment not accurately reflect or even approximate "current" or "ongoing" activities at the range, it is objectionable because it has no bearing on the fundamental question – whether, *before* filing the First Amended Complaint, Plaintiffs had good faith basis to alleging ongoing CWA or RCRA violations. Plaintiffs' request to fire tracer rounds is a transparent and impermissible attempt to manufacture, via this rather uncommon phase of discovery on jurisdictional facts, the very facts that Plaintiffs were required to marshal *before* filing their complaint. As it is totally unrepresentative of FBI Range practices and procedures, the firing of tracer bullets is no more probative typical FBI Range operations, or permissible under the federal rules, than if Plaintiffs had proposed to intentionally fire a round over the ballistic backstop in an effort to prove it *can* happen. At bottom, Plaintiffs' request is a further indication that the First Amended Complaint's allegations of "ongoing" and "current" violations are premised on rank speculation, facially defective, and lack a good faith basis.

As noted, the United States does not believe that *any* inspection of the FBI Range is warranted or appropriate during this phase of focused discovery. Notwithstanding this position, and trying to avoid again burdening the Court with this issue, the FBI went to great lengths to confer with Plaintiffs to establish some reasonable parameters for a site inspection that achieved most of Plaintiffs' objectives while taking into account the above considerations. Plaintiffs rejected all of the FBI's proposals and refused to compromise on any aspect of the site inspection. If the Court nevertheless allows a site inspection during this phase of discovery, it should be limited to the visual observation of the areas of the range that are relevant to the jurisdiction issue (principally the ballistic backstop and firing line), occur during a period when FBI training is not in progress, and not include the firing of tracer rounds. The FBI remains willing to perform a demonstration shoot (not involving tracer rounds) if Plaintiffs so desire at this stage of the case. Additionally, given the intense demands on time at the range for training purposes, and to minimize disruption to previously-scheduled sessions, the site inspection should be conducted during the afternoon of April 18, 2008, or, alternatively, April 4, 2008 and limited to a period of no more than 3 hours.

III.  **THE UNITED STATES' PROPOSAL FOR JURISDICTIONAL FACT DISCOVERY**

By April 21, 2008, the United States will produce responsive documents, from January 1, 2006 to present, pertaining to:

1. relevant range activities presently occurring at the FBI Range (*i.e.,* firearms activities that theoretically could result in a discharge to Lake Michigan), including documents pertaining to Standard Operating Procedures, FBI sign-in logs (and, if in FBI possession, sign-in logs pertaining to non-FBI range users), and the schedule and frequency of use of the FBI Range;

2. the current design and configuration of relevant range areas, including the ballistic backstop;

3. types of weapons and the types and quantities of ammunition currently used at the FBI Range;

4. current safety and operational procedures for relevant range activities, including as to the Lake Michigan safety zone (33 C.F.R. § 334.830);

5. current and future disuse of the skeet and trap facilities;

6. Accidental Discharge Reports or other incident reports related to firearms discharges; and

7. the FBI's ongoing response action pursuant to CERCLA section 104, 42 U.S.C. § 9604, and related legal authorities.

By April 21, 2008, the Plaintiffs will produce the following documents or other information pertaining to the Court's subject matter jurisdiction which are not attached to or referenced in the First Amended Complaint and which Plaintiffs may submit in opposition to the United States' Motion to dismiss pertaining to:

1. allegations of ongoing, current, or intermittent violation of the CWA or RCRA at the FBI Range, including in the Lake Michigan safety zone, 33 C.F.R. § 334.830;

2. allegations of ongoing, current, or intermittent violation of the CWA and RCRA in connection with Coast Guard live-fire training exercises on the "East Coast (Atlantic Ocean)" or on the Great Lakes;

3. the submission of statutorily-required notice of intent to sue letters to Defendant Department of Defense pursuant to the CWA, RCRA, and CERCLA citizen suit provisions;

4. the submission of an administrative claim to all Defendants as required by the FTCA;

5. Plaintiff Steven B. Pollack's and Plaintiff Blue Eco Legal Council's standing as necessary for the Court to evaluate injury-in-fact, causation and redressability in accordance with *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992); and

6. Plaintiff Blue Eco Legal Council's legal status, establishment, purpose, and membership as necessary for the Court to evaluate the issue of Blue Eco Legal Council's organizational or associational standing.

If the Court allows an inspection of the FBI Range, such inspection shall be during the afternoon of April 18, 2008, or, alternatively, April 4, 2008, for a period not to exceed 3 hours, and shall consist of visual observation of relevant range areas and a demonstration shoot by an FBI agent of typical weapons and ammunition.

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources
Division

Dated: March 20, 2008

/s/ David S. Gualtieri
DAVID S. GUALTIERI
Environmental Defense Section
P.O. Box 23986
Washington, DC 20026-3986
(202) 514-4767; (202) 514-8865 (fax)
David.Gualtieri@usdoj.gov

PATRICK J. FITZGERALD
United States Attorney

/s/Linda A. Wawzenski
LINDA A. WAWZENSKI
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-1994
linda.wawzenski@usdoj.gov

## CERTIFICATE OF SERVICE

    I hereby certify that on the date below the foregoing DEFENDANTS' PROPOSED PLAN AND SCHEDULE FOR FOCUSED DISCOVERY ON JURISDICTION AND OBJECTIONS TO PLAINTIFFS' PROPOSAL and the Exhibits thereto were filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated: March 20, 2008                       /s/ David S. Gualtieri
                                                   Counsel for the United States