**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Steven B. Pollack and ) | |
| Blue Eco Legal Council, ) | |
| ) | |
| Plaintiffs, ) | Case Number: 08-cv-320 |
| ) | Assigned Judge: Guzman |
| v. ) | Magistrate Judge: Brown |
| ) | |
| United States Department of Justice, ) | |
| United States Coast Guard, ) | CWA, RCRA, CERCLA, AND |
| United States Navy, ) | PUBLIC NUISANCE FTCA CASE |
| United States Marines, and ) | |
| United States Department of Defense, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT- SECOND AMENDED

1. Plaintiffs bring suit as private attorneys general under the citizen suit provisions of the CWA, RCRA, and CERCLA, and for tort damages under the Federal Tort Claims Act, against the President, for discarding lead bullets onto state owned lakebeds which are held in trust for the public, and thereby damaging natural resources and the public water supply. The accumulation of these discharges over 90 years has created an imminent and substantial endangerment for which Plaintiffs ask this Court to use its broad statutory powers to order Defendants to stop discharging lead bullets onto state owned lakebeds and into the Nation's waters, order Defendants to pay $35.2 million to assess and remove the hazardous material in Lake Michigan at the FBI facility in North Chicago, and order Defendants to compensate the public for damage to natural resources with a Supplemental Environmental Project in the amount of $20 million.

## JURISDICTIONAL STATEMENT

2. FEDERAL QUESTION JURISDICTION - The United States District Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 to hear Plaintiff's claims for violations arising under federal environmental statutes

including the Clean Water Act, 33 U.S.C. § 1365, Resource Conservation Recovery Act (RCRA), 42 U.S.C. § 6972(a)(1)(A),(B) the Comprehensive Environmental Response Compensation and Liability Act (CERCLA, a.k.a. Superfund), 42 U.S.C. § 9659(a) and (b). Each of these federal statutes contains a clear waiver of sovereign immunity allowing citizens to bring suit against the President.

The United States District Court also has federal tort subject matter jurisdiction as against the President for tort under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). The President, through the intentional and reckless acts by the FBI/DOJ, Coast Guard, Navy, and Marines, for discharging lead into the public waters, is damaging valuable public resources and violating the public's right to them as trust beneficiaries.

3. STANDING - This Complaint alleges facts which if proven establish that the Blue Eco Legal Council is an environmental organization with an interest in the environmental safety of the Great Lakes watershed and its members include Great Lakes residents whose drinking water supply and natural environment is harmed by Defendants' actions in violation of federal environmental law. Plaintiffs have therefore alleged injury caused by Defendants' actions that this Court can redress under federal statute so as to have standing to sue under Article III, Sec. 2, Cl. 1 of the United States Constitution.

4. VENUE - The United States District Court for the Northern District of Illinois is the proper venue for the instant action pursuant to 28 U.S.C. § 1391(e)(2) because the majority of the property that is the subject of the action is located in this district. Venue is also proper in the Northern District of Illinois pursuant to 42 U.S.C. §9659(b)(2)(CERCLA citizen suit provision) and 42 U.S.C. §9613(b)(CERCLA venue provision).

## STATEMENT OF FACTS

5. Between January 19, 2006 and September 12, 2006 the U.S. Coast Guard conducted 18 live-fire training exercises on all five United States Great Lakes. During this training, the Coast Guard discharged 62,584 bullets, in excess of

800lbs, into the waters of the United States, each bullet being made principally of lead. see Exhibit A[1].

6. Lead is a listed hazardous material under RCRA, 40 C.F.R. Part 261, Subpart D; and as a Persistent Bio-accumulative Toxin (PBT) under the Toxic Reporting Inventory. 42 U.S.C. § 11001 et seq., 40 C.F.R. Part 372.

7. The Coast Guard discharges these lead bullets into the waters of the United States without a permit under the Clean Water Act.

8. The Coast Guard could not get a permit using the same standards the President applies towards private shooting facilities. see Exhibit B[2], Exhibit L[3]

9. The Blue Eco Legal Council consists of members of the public whose potable (drinking) water supply is drawn from the Great Lakes and who otherwise have an interest in this natural environment.  Steven B. Pollack is a member of the organization and lives several miles south of the North Chicago site (¶14-¶22). Plaintiff organizations' water supply and environment may be imminently and substantially endangered by Defendants' lead discharges and accumulation.  The Blue Eco Legal Council and its members therefore have an interest in the condition of the Great Lakes environment and drinking water quality and in any violations of law that endanger or degrade that environment.

10. On November 9, 2006, Plaintiff's served Defendant Coast Guard its 60-Day Notice of Intent to sue, thereby satisfying statutory jurisdictional requirements to suit.

11. On December 18, 2006 the Coast Guard withdrew the proposal to create permanent training zones and voluntarily suspended further gunnery "training

---

[1] Response by Coast Guard to FOIA request from attorney Marc Fink, Duluth MN., *Number of Rounds Discharged During Live Fire Training between Jan. 19, 2006 and Sept. 12, 2006*
[2] US EPA, Region 2, *Best Management Practices for Lead at Outdoor Shooting Ranges*, (Rev. 2005),
[3] *Agreements and Administrative Orders of Consent Precluding Discharge of Lead into Navigable Waters at Private and Public Outdoor Shooting Ranges (September 9, 2005; August 2, 2005; June 3, 2003)*

on the Great Lakes to satisfy non-emergency training requirements unless we publish a rule." see Exhibit D[4]

12. On January 24, 2007, Defendant Coast Guard, through its Department of Justice attorneys, refused to admit its prior actions violated any federal environmental law. see Exhibit C[5].

13. Upon information and belief, as of the filing of this Complaint, the Coast Guard has taken no action to collect from the lakebed its prior discharge of lead bullets and has therefore discarded them into the public potable water supply of the Great Lakes.

14. On August 21, 2007 the Coast Guard admitted in a press release that it continues to discard lead bullets into the waters of the United States, making the Coast Guard's violations ongoing as required under *Gwaltney v. Cheapeake Bay Found.*, 484 U.S. 49 (1987).  see Exhibit E[6]

15. On March 10, 2007 Plaintiffs filed a Freedom of Information Act request to Defendant Department of Justice regarding its FBI Firearms Training Facility in North Chicago, IL.  see Exhibit F, FOIA Request.

16. On September 11, 2007, Defendant Department of Justice responded to Plaintiffs' FOIA request admitting the FBI, Navy, and Marines have been using 2,975 acres of Lake Michigan as an "Impact Area" for discarded lead bullets and artillery since 1918.  Defendants are currently discarding these lead bullets into the waters of the United States at North Chicago, IL and the East Coast (Atlantic Ocean) without a permit under the Clean Water Act, nor could it likely get one using the same standards it applies towards private shooting facilities. see Exhibit G[7], Exhibit B[8], and Exhibit L[9],

---

[4] Coast Guard Press Release, *Voluntary Great Lakes Suspension of Non-Emergency Training* (Dec. 18, 2006)
[5] Letter from David Gualtieri and John Irving at DOJ to Steven B. Pollack, *Denial of Guilt for U.S. Coast Guard Discharge of Lead into Great Lakes* (Jan. 24, 2007)
[6] Coast Guard Press Release, *Admission of Ongoing Violations* (August 21, 2007)
[7] Response by Federal Bureau of Investigation to FOIA Request by Steven B. Pollack, *Real Estate Appraisal and Related Studies of FBI Firearms Training Facility in North Chicago, Illinois as of April 25, 1986* (September 11, 2007)

17. On October 2, 2007, Plaintiffs served Defendant FBI/DOJ, Navy, and Marines its 60-Day and 90-Day Notices of Intent to sue, thereby satisfying statutory jurisdictional requirements.

18. Upon information and belief, Defendant DOJ continues to use this range and continues to discard its lead bullets into the potable water supply in Lake Michigan without any plan to recover these accumulating discharges. see Exhibit H[10]; Exhibit J[11]; 33 C.F.R. § 334.830 ("When firing is in progress, the enforcing agency will cause red flags to be displayed…If such flags are displayed it will indicate…that the waters in the danger zone are subject to impact by rounds missing or ricocheting off the impact berm.")

19. Upon information and belief, the Federal Bureau of Investigation allows municipal and state police departments to discard lead bullets into the Lake Michigan range impact area.

20. .Upon information and belief, the State of Illinois has not ordered any cleanup of this site. see Exhibit I[12].

21. There is one potable water intake (PWI) and another unmarked intake inside the Lake Michigan range impact area and one on the edge of what is marked "Danger Zone".  Upon information and belief, the PWI marked in the range impact "Danger Zone" serves the City of North Chicago. See Exhibit J[11].

22.   The City of North Chicago's last water quality report detected the presence of lead in the public water supply. See Water Quality Report, North Chicago, IL (2006), Exhibit K[13].

---

[8] U.S. EPA, *Best Management Practices for Lead at Outdoor Shooting Ranges*
[9] US EPA Press Releases, Agreements and Administrative Orders of Consent Precluding Discharge of Lead into Navigable Waters at Private and Public Outdoor Shooting Ranges (September 9, 2005; August 2, 2005; June 3, 2003)
[10] Satellite Image from Globexplorer.com, *FBI Firearms Training Facility in North Chicago, IL* (Purchased October 6, 2007)
[11] NOAA Nautical Chart Panel 14905, *Portion of U.S. Government Navigation Chart, Extent of Danger Zone in Lake Michigan and related regulations* (Current)
[12] Response by Illinois EPA to FOIA Request by Steven B. Pollack, *Determination of No Information in IEPA's Records for Firearms Training Unit in North Chicago, IL* (June 20, 2007)

23. The Great Lakes lakebed is owned by the states bordering it and held in trust for the benefit of the public, including Plaintiffs.  see *Illinois Central Railroad v. Illinois*, 146 U.S. 387 (1892) and the Submerged Lands Act[14].

24. Defendant Department of Justice, in its normal role as prosecutor of these environmental laws on behalf of the President, brings enforcement actions against private facilities whose discharges into the Nation's waters are the same as its own discharges in this case.  see Exhibit L[9]; Exhibit B[2] ("**Shooting into water bodies or wetlands should not occur**.  Besides the environmental impacts discussed previously, the introduction of lead to surface water bodies will likely cause a range to be susceptible to litigation and/or governmental action.  Shooting into water bodies or wetlands is NOT an option for ranges that want to survive in the future." Chapter II – Page II-4)(emphasis in original).

25. On March 26, 2008 Plaintiffs' expert James Barton documented and collected 31 lead bullets from Foss Park and the beach below the FBI Facility that had ricocheted off the FBI Range impact berm.

## STATUTES INVOLVED

26. The President does not have any environmental waiver for operations supporting national defense or law enforcement.  To the contrary, the Clean Water Act (CWA), Resource Conservation and Recovery Act (RCRA), and the Comprehensive Environmental Response, Cleanup, and Liability Act (CERCLA)

---

[13] North Chicago Water Quality Report, *Regulated Contaminants (lead) Detected* (2006)
[14] Submerged Lands Act – 43 U.S.C. §§ 1301- 1311
   **(a) Confirmation and establishment of title and ownership of lands and resources; management, administration, leasing, development, and use**
   It is determined and declared to be in the public interest that
   (1) title to and ownership of the lands beneath navigable waters within the boundaries of the respective States, and the natural resources within such lands and waters, and
   (2) the right and power to manage, administer, lease, develop, and use the said lands and natural resources all in accordance with applicable State law be, and they are, subject to the provisions hereof, recognized, confirmed, established, and vested in and assigned to the respective States. 43 U.S.C. § 1311(a)(1),(2).

all contain federal facility provisions mandating that the President comply in the same manner at federal facilities as it enforces at private facilities.

27. The CWA, RCRA, and CERCLA all contain waivers of federal sovereign immunity for suits by citizens.

28. The Federal Tort Claims Act waives sovereign immunity for tort claims against the government.

## CAUSES OF ACTION

29. Plaintiffs allege that the President is endangering human health and the environment by discarding hazardous munitions into the waters of the United States, and is therefore in violation of the CWA, RCRA, and public nuisance laws.  Plaintiffs additionally allege that these violations by the President and municipal and state police departments have created uncontrolled hazardous waste sites for which Defendants, both named and unnamed, have liability under CERCLA.

### Count 1 – Clean Water Act (CWA)

30. The CWA makes it illegal to discharge a pollutant into the Nations waters, without a permit, from a point source.

31. The President's best management practices for lead at outdoor shooting ranges, Exhibit B[2], puts the public on notice that it is a violation under the CWA to discharge lead into the Nation's navigable waters. This is exactly what the FBI, Navy, and Marines do at the North Chicago site and the Coast Guard does from its vessels when it conducts firearms training.

32. "Discharge of pollutants…means…any addition of any pollutant to the navigable waters from any point source." 33 U.S.C. § 1362(12).

33. Point Source "means any discernible, confined, and discrete conveyance, including…any…vessel…from which pollutants are or may be discharged." 33 U.S.C. §1362(14).

34. Pollutant "means solid waste…munitions…discharged into water." 33 U.S.C. § 1362(6).

35. Defendants discharged, and continue to discharge, munitions pollutants from its facilities into this Nations' navigable waters.
36. Plaintiffs therefore claim that the President is in violation of the CWA and will continue to be in violation until this Court declares illegal the President's discharge of lead pollutants into the waters of the United States.

### Count II – Resource Conservation and Recovery Act (RCRA)
### (Lake Michigan)

37. RCRA makes it illegal to discard (abandon) hazardous waste into the environment.
38. The President has discharged substantial amounts of lead bullets into the environment through the Coast Guard live fire training exercises and from the North Chicago firearms training facility.
39. The President has no plans to recover these discharges, thereby abandoning and discarding them in violation of RCRA's cradle to grave regulatory system. These regulatory requirements would not be actionable if the President had managed the waste instead of discarding it. see *Connecticut Coastal Fishermen's Assoc. v. Remington Arms Co.* 989 F.2d 1305, 1314 (2nd Cir. 1993)
40. Because the President has not contained these lead discharges within his federal facilities, and has shown no intention of recovering them, Plaintiffs allege that this lead is now discarded and accumulating in the public's potable water supply and therefore meets the statutory definition in RCRA of an "imminent and substantial endangerment" to human health and the environment. see Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B); *Connecticut Coastal*, 989 F.2d at 1314. (statutory, not regulatory, cause of action).
41. Plaintiffs therefore claim that the President is in violation of RCRA and will continue to violate until this Court declares illegal the President's ongoing and future discharge of lead bullets into the waters of the United States and orders the assessment and removal of past discharges that Plaintiffs ask for in their prayer for relief. see Exhibit M[16] (assessment); Exhibit N[17] (removal).

## Count III – Resource Conservation and Recovery Act (RCRA)
## (Foss Park)

42. The current design of the FBI Range allows lead bullets to ricochet outside the facility onto the adjacent Foss Park near children's playground equipment, and onto the public beach. see ¶ 25. Because the President does not admit bullets ricochet off the range, he has no plan to recover these munitions, and has created waste under the statutory provisions of RCRA.  See Military Munitions Rule; Ex B.

43. This waste presents an imminent and substantial endangerment to human health and the environment because members of the public, especially children, are likely to find lead bullets an attractive nuisance.  Additionally, shoreline wildlife is susceptible to ingesting brightly jacketed lead munitions lying on the beach.

44. "The district court shall have jurisdiction, …to restrain any person who has contributed or who is contributing to the past or present handling, storage, …or disposal of any solid or hazardous waste referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both." 42 U.S.C. § 6972(a)(2)

## Count IV – Comprehensive Environmental Response,
## Cleanup, and Liability Act (CERCLA)

45. CERCLA grants "broad power to command government agencies and private parties to clean up hazardous waste sites." *United States v. Bestfoods*, 524 U.S. 51, 54 (1998).

46. CERCLA declares "[e]ach department, agency, and instrumentality of the United States (including the executive, legislative, and judicial branches of government) shall be subject to, and comply with, this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 9607 of this title" 42 U.S.C. § 9620(a)(1).

47. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides, in pertinent part, as follows:

    Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section-

    (1) the owner and operator of a vessel or a facility,

    (2) any person who at the time of disposal of any hazardous substance owned or operated a facility a facility at which such hazardous substance were disposed of,

    (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility…owned or operated by another party or entity and containing such hazardous substances, and

    (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities,…or sites selected by such person, from which there is a release which causes the incurrence of response costs, of a hazardous substance, shall be liable for:

    >   (A) All costs of removal or remedial action incurred by the United States Government…not inconsistent with the National Contingency Plan;
    >   \* \* \*
    >   (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such release;

48. There have been "releases" within the meaning of Section 101(22) of CERCLA, 42 U.S.C. §9601(22), and the threat of continuing releases of hazardous substances into the environment at and from the sites.

49. Defendants are persons liable for the releases and threatened releases of hazardous substances under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

50. Releases of lead by Defendants have resulted in injury to lake sediments and have caused impairment to the local water supply, and Defendants will continue to cause natural resource damage until enjoined by this Court to stop. see Exhibit K[13].

51. By failing to assess and remediate the lead bullets discarded into the environment, the President is not holding himself to the same standards for liability and cleanup that the President enforces at private outdoor ranges and is therefore in violation of Section 120 of CERCLA, 42 U.S.C. § 9620. see Exhibit B[2]; Exhibit L[3]; *U.S. v. Lake Geneva Associates, Playboy Enterprises, and Marcus Geneva, Inc.*, No. 98 C 0972 (E.D. WI)(finding imminent and substantial endangerment for lead shot in wetland and ordering removal).

52. Plaintiffs therefore claim that the President and all other municipal or state police departments that discharged hazardous substances into the Great Lakes have violated the law and will continue to ignore the damage to natural resources until this Court declares illegal under CERCLA their discharge of lead waste into the waters of the United States, orders them to assess the damage and remove past discharges, and holds them jointly and severally liable for all cleanup costs and compensation for damage to natural resources.

Count V – Public Nuisance

53. Plaintiffs re-allege the facts in ¶1-¶24.

54. Defendants are in violation of the Illinois common law of public nuisance by discarding its lead bullets into Plaintiffs' drinking water and allowing them to accumulate on the lakebed. In *People ex rel. Burris v. C.J.R. Processing, Inc.*, 269 Ill. App. 3d 1013, 1019, 647 N.E.2d 1035 (1995), the court, citing *Village of Wilsonville v. SCA Services, Inc.*, 86 Ill. 2d 1, 21-22, 426 N. E. 2d 824 (1981), defined common law public nuisance as "an act or failure to act which injures the safety, health or morals of the public; or which causes substantial public annoyance; inconvenience or injury." It further observed:

> "The Criminal Jurisprudence Act defines public nuisances in pertinent part:
> 'It is a public nuisance:

    1. To cause or allow *** any offal, filth, or noisome substance to be collected, deposited or to remain in any place, to the prejudice of others.´ [720] ILCS 55/221(1)." *Burris*, 269 Ill. App. 3d at 1019.

55. Further, it a public nuisance: "To corrupt or render unwholesome or impure the water of a spring, river, stream, pond, or lake to the injury or prejudice of others." 720 ILCS 55/221(3)

56. Plaintiffs therefore claim that the President and any other municipal or state police department that contributed to the lead waste accumulation in Lake Michigan are guilty of creating a public nuisance in Plaintiffs' source of fresh drinking water and have violated Plaintiffs' rights in the lakebed that are held in public trust for its benefit. see *Illinois Central Railroad v. Illinois*, 146 U.S. 387 (1892).

**WHEREFORE**, Plaintiffs, The Blue Eco Legal Council and its members respectfully request that this Court:

1. Enter a declaratory judgment pursuant to the CWA, RCRA, CERCLA, and Public Nuisance law that the President, through the FBI/DOJ, Coast Guard, Navy, Marines, and Department of Defense, is liable and assess joint and several liability between all Defendants for the cost of assessment, remediation, and damages.

2. Preliminarily and permanently enjoin Defendants from discharging lead bullets into the waters of the United States.

3. Preliminarily and permanently enjoin Defendants from discharging lead bullets onto public lands adjacent to its FBI Range.

4. Enter a finding that past accumulation of lead at the FBI site, by itself, creates an imminent and substantial endangerment to human health and the environment under the statutory provisions of RCRA, and order Defendants to pay $35.2 million for the cost of underwater assessment and removal of the hazardous materials from the lakebed as follows:  Plaintiffs request this Court order Defendants to pay $8.2 million into escrow for the purpose of Underwater

Ordnance Recovery Inc.[15] conducting the Wide Area Preliminary Assessment it proposes in <u>Exhibit M</u>[16]; Plaintiffs also request that this Court order Defendants to pay $27 million into escrow for the purpose of Underwater Ordnance Recovery Inc. removing the lead bullets and artillery from the lakebed as proposed in <u>Exhibit N</u>[17].

5. Enter a finding that Defendants, through the tort of public nuisance, have damaged important natural resources and order Defendants to compensate the public pursuant to the Federal Tort Claims Act for these damages in the form of a $20 million Supplemental Environmental Project (SEP). The SEP will be separate $10 million donations to two charitable environmental groups with 501(c)(3) status for projects or programs of the groups' choosing intended to protect the Great Lakes. Plaintiffs have no affiliation with the following two organizations and suggest them as the SEP recipients: Alliance for the Great Lakes and Natural Resources Defense Council.

6. Order Defendants to pay Plaintiffs the reasonable value of their attorney fees and costs in this matter.

    Respectfully submitted,

    /s Steven B. Pollack

    _____

    Blue Eco Legal Council
    By Steven B. Pollack, one of its attorneys
    3390 Commercial Ave
    Northbrook, IL 60062
    847-436-9566

---

[15] Plaintiffs have no affiliation with, or financial interest in, Underwater Ordnance Recovery Inc.

[16] Proposal by Underwater Ordnance Recovery Inc. to District Court in Instant Case, *Proposal: Wide Area Assessment for 3,000 acres of Lake Michigan at FBI Firearms Training Facility in North Chicago, IL* (January 14, 2008)

[17] Proposal by Underwater Ordnance Recovery Inc. to District Court in Instant Case, *Proposal: Removal of Lead and Artillery from 3,000 acres of Lake Michigan at FBI Firearms Training Facility in North Chicago, IL* (January 14, 2008)