

**U.S. Department of Justice**

Environment and Natural Resources Division

DJ # 90-5-1-4-18227

*Environmental Defense Section*  *Telephone (202) 514-2686*
*P.O. Box 23986*  *Facsimile (202) 514-8865*
*Washington, DC 20026-3986*

May 12, 2008

**VIA E-mail**

Blue Eco Legal Council
Steven B. Pollack, Esquire
Executive Director
3390 Commercial Avenue
Northbrook, IL 60035
steve@ecoesq.com

  Re: *Pollack v. United States Dept. of Justice*, (N.D. Ill.).

Dear Mr. Pollack:

  In our April 21, 2008, letter transmitting documents produced we explained that the FBI's review of documents was ongoing and that the FBI would supplement its production if appropriate. In our letter dated April 25, 2008 in response to Plaintiffs' demand for additional documents, we reiterated that point, stating that if the FBI discovered additional documents related to public visits to the FBI Range, we would produce any such non-privileged documents. Certain documents or categories of documents were subject to motions to compel that Plaintiffs filed on April 28, 2008, and which were addressed at a hearing on May 1, 2008.

  As to the documents sought from the FBI concerning activities at the FBI Range involving non-law enforcement personal, the FBI has identified some additional responsive documents. We have supplemented our production of those documents with the documents attached to this email.

  In an April 25, 2008 e-mail and in the subsequent motion to compel, the Plaintiffs sought complete copies of what we had identified in our March 6, 2008, letter to Plaintiffs as the following two documents:

  (1) Naval Energy and Environmental Support Activity, Initial Assessment Study of Naval Complex Great Lakes, Illinois (3/86), and;

  (2) Rogers, Golden & Halpern, Navy Initial Assessment Study, Naval Complex (NC) Great Lakes, Illinois (3/86).

  · We have discussed this matter with the Navy and have been informed that those titles (and the documents attached to your April 28, 2008, Motion to Compel) actually refer to the same document. Mr. Gualtieri's March 6, 2008, letter to Plaintiffs incorrectly referred to this

single document as two documents. We have since determined that the source of potential confusion is that a separate cover sheet was used to transmit particular chapters of the document at different points in time, even though the document transmitted was the same. The "related" memoranda referred to in Mr. Gualtieri's March 6, 2006, letter to Plaintiffs have been produced to Plaintiffs already (*see* NAVY310-11, NAVY324-25, and NAVY346). The Navy has not identified additional related memoranda.

As Plaintiffs are aware, and consistent with our March 6, 2006, letter, the Defendants produced relevant, responsive excerpts of the 1986 Initial Assessment Study. We have re-reviewed the entire document for additional responsive material, and the .pdf document attached to this email titled "Pollack Naval Complex Study" contains all portions of that document that discuss the FBI Range (then known as the "NTC Range") and adjacent property. This production complies with the Court's May 1, 2008, order, and is, in any case, what we indicated we would do in our letter of April 25, 2008.

Finally, this letter responds to your e-mail inquiry of May 2, 2008, regarding the event referenced on page 32 of the EAC Phase I Report (Jul. 5, 2006) that was previously produced to Plaintiffs. We have inquired of the FBI and been informed that, as is discussed in the EAC Report, in August 2001, an individual working at the North Chicago Water Treatment Center, located immediately north of the FBI Range, was struck by what was believed to be a bullet fragment from the FBI Range (which the FBI could not confirm, as the fragment was lost and not available to be examined). The individual was uninjured, and the matter was not pursued further. As the incident occurred during FBI qualifications testing, it appears (though is not certain) that it resulted from firearms training activities at the FBI Range, perhaps resulting from a bullet fragment originating from the impact berm. To the extent that may be the case, it is important to point out that the impact berm was mined and substantially altered (by re-grading, optimizing the angle, and adding additional earthen material) in 2006; therefore, it is in a materially different condition than it was in August 2001.

As the incident occurred nearly seven years ago, it is well outside the scope of limited jurisdictional fact discovery, as to which the FBI was required to produce certain documents going back only three years. Moreover, as you are now well aware and contrary to the erroneous contention in your e-mail, we have raised no jurisdictional arguments in our motion to dismiss as to which this information is relevant in any case. You accordingly have no need for "discovery" on this issue to respond to our motion to dismiss, and certainly no need for discovery beyond the limited discovery allowed by the Court. Indeed, but for the limited jurisdictional fact discovery that the Court allowed, discovery in this case is stayed.

While we are under no obligation to provide discovery regarding this incident, we note that information regarding a potential off-range incident is relevant to the FBI's ongoing evaluation of the potential for bullets or bullet fragments to escape the range. As such, the FBI has advised its range design and safety consultant of this incident. The final results of the FBI's evaluation will be made available to Plaintiffs and the Court at the appropriate stage of these proceedings.

Do not hesitate to contact me should you have any questions concerning this production.

Sincerely,

Matthew Oakes, Attorney
Environmental Defense Section

Atts. (.pdf via e-mail)
cc (via e-mail):

L. Wawzenski, USAO
J. Olkiewicz, FBI
J. Tew, USN