**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

```
_____
Steven B. Pollack and              )
Blue Eco Legal Council,            )
                                   )
            Plaintiffs,            ) Case Number: 08-cv-320
                                   ) Assigned Judge: Guzman
      v.                           ) Magistrate Judge: Brown
                                   )
United States Department of Justice,)
United States Coast Guard,         ) CWA, RCRA, CERCLA, AND
United States Navy,                ) PUBLIC NUISANCE FTCA CASE
United States Marines, and         )
United States Department of Defense,)
                                   )
_____Defendants._____)
```

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs have addressed much of Defendants motion to dismiss as part of their preliminary injunction reply brief. Because the Court will decide both motions simultaneously, and the Court assured Plaintiffs at the May 21, 2008 status hearing that these arguments are properly before the Court for both motions, they are not copied here.

### Plaintiffs Have Standing

Plaintiffs have standing to bring suit for every count in their complaint because they have a concrete and particularized connection to the areas being harmed by Defendants' actions. The relief they seek will redress the harms alleged. The specific arguments responding to Defendants' assertions to the contrary are found in Plaintiffs' preliminary injunction reply brief.

### The Court Must Convert Defendants Motion To Dismiss Into a Motion for Summary Judgment Because Defendants Rely On Jurisdictional Requirements In the Statutes And Have Introduced New Facts Outside The Pleadings

Because jurisdiction under the Clean Water Act and RCRA requires allegations of ongoing violations and the absence of an ongoing CERCLA cleanup,

Defendants' motion contesting Plaintiffs' adherence to these requirements should be decided under Fed. R. Civ. P. 12(b)(6) and not 12(b)(1).

*Frey v. Environmental Protection Agency*, 270 F.3d 1129, 1132 (7th Cir., 2001):

> It is instead a question about the prerequisites that the plaintiffs must satisfy to obtain relief. A person who does not comply with § 113(h) will not prevail, but the court's power to adjudicate the case is clear, and a dismissal should be predicated on Federal Rule of Civil Procedure 12(b)(6), not on 12(b)(1). "A standard rule in considering jurisdictional challenges is that when the court's jurisdiction and the claim for relief are predicated on the same federal statute but the basis for relief is subsequently found to be inapplicable, the district court should not dismiss the case under Rule 12(b)(1), but rather proceed as if jurisdiction exists and determine the merits of the claim under Rule 12(b)(6)." Central States, Southeast and Southwest Areas Health and Welfare Fund v. Neurobehavioral Associates, 53 F.3d 172, 174 (7th Cir. 1995).

Because Plaintiffs and Defendants have brought up new facts regarding ongoing violations and whether a CERCLA cleanup has been initiated prior to suit, this Court should convert Defendants' motion to dismiss into one for summary judgment under Fed. R. Civ. P. 56. See *Jacobs v. City of Chicago*, 215 F.3d 758, 765-6 (7th Cir., 2000):

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56

And *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir., 2002):

> when the judge considers evidence outside the pleadings he must convert the defendant's motion to dismiss under Rule 12(b)(6) to a motion for summary judgment under Rule 56

### Plaintiffs Clean Water Act Count Cannot Be Dismissed Because The FBI and Coast Guard Violations Are Not Wholly Past And Plaintiffs Have Standing

Defendants explicitly argue that the Coast Guard violations are wholly past and that the Court has no jurisdiction for the FBI violations because Plaintiffs don't have sufficient connection to their environment to have standing. Defendants'

standing arguments are addressed in Plaintiffs preliminary injunction reply brief. The arguments regarding the Coast Guard rely on artificially distinguishing their Great Lakes training from training in other parts of the country including the East Coast. Coast Guard training is one single program, and its violation of the Clean Water Act should not be viewed as a series of discrete violations that would allow evasion of judicial review through temporary geographic alterations. Despite the assertion that their Great Lakes discharges have stopped, Plaintiffs allege that the Coast Guard continues discharging lead bullets into the Great Lakes.

Violations are wholly past, and not subject to judicial review, only when there is no "reasonable likelihood that a past polluter will continue to pollute in the future." *Gwaltney of Smithfield, Ltd v. Chesapeake Bay Foundation, Inc*, 484 U.S. 49, 57 (1987). Voluntary cessation of violating activities will normally not moot an action. *Friends of the Earth Inc. v Laidlaw Environmental Serv.*, 528 U.S. 167 (2000) (Both Laidlaw's permit compliance and the facility closure might moot this case, but only if one or the other event made it absolutely clear that violations could not reasonably be expected to recur).

Here, no state regulatory agency has issued a permit or brought an enforcement action against the Coast Guard for its past discharges. Neither has the US EPA or Department of Justice ordered the Coast Guard to cease discharging lead munitions into the Nations waters. To the contrary, the Department of Justice acting as attorney for the Coast Guard denies that these actions violate any law. See complaint, exhibit C. The Coast Guard live fire program has not been dismantled and the voluntary cessation in the Great Lakes is not binding through any permit, consent decree, or administrative order. The program is not therefore incapable of future violations.

In fact, Plaintiffs have provided evidence that the Coast Guard violations in the Great Lakes are ongoing near Camp Perry, Ohio. See preliminary injunction reply, exhibits 8, 9. The Coast Guard violations are therefore not wholly past because they are continuously or intermittently violating the Clean Water Act despite their purported partial geographic voluntary cessation. Plaintiffs are

entitled to declaratory and injunctive relief and dismissal would be improper based on these circumstances.

The Coast Guard also admits it moved most of its program to the East Coast. See complaint, exhibit E.  Defendants raise an interesting issue regarding the venue provision in the Clean Water Act that states violations can only be brought in the judicial district in which they occur. 33 U.S.C. § 1365(c)(1).  They argue that East Coast violations cannot therefore be brought in the Northern District of Illinois.  This argument, however, ignores that Coast Guard training is a single national program, the violations of which demand national judicial relief to avoid geographic gamesmanship.

But even if the Court finds the venue provision prevents such national relief, the continuing East Coast violations are still relevant as evidence of the likelihood of future violations in the Great Lakes.  Because they don't admit their past discharges in the Great Lakes violated the law, the cessation in the Great Lakes is only voluntary, and the violating activities continue elsewhere, there is a reasonable likelihood of future violations in the Great Lakes based upon these facts.

Plaintiffs are therefore entitled to declaratory and injunctive relief for Coast Guard and FBI violations and dismissal for lack of jurisdiction would be improper based on these jurisdictional facts.

### Plaintiffs' Regulatory and Statutory RCRA Claims Cannot Be Dismissed Because Defendants' Discharges Land Off-Range And Defendants Have Shown No Intent To Retrieve Them

Defendants central assertion that their discharges into water are not regulatory RCRA violations is that the impact areas constitute part of their range and that the discharges are therefore not off-range.  While Plaintiffs do not disagree that the President has authority to use the waters of the United States for training purposes, the discharge and abandonment of hazardous materials into the Nations waters violates the law and there are less toxic alternatives.

The application of RCRA to Defendants actions is briefed in Plaintiffs motion for preliminary injunction on pages 8 to 13.  This response will therefore refer the

Court to that document and will focus on Defendants defense that control of the water makes it part of their range.

The Coast Guard's right to conduct training on the water does not make the submerged land part of its range. Such an interpretation is at odds with the Clean Water Act which makes it unlawful for vessels, including federal, to discharge pollutants into the Nations waters. RCRA cannot be interpreted to authorize what the Clean Water Act makes illegal. The discharge of lead munitions from Coast Guard vessels into the Nations waters constitutes abandonment off-range and is both a regulatory and statutory violation of RCRA.

Further supporting this interpretation is that the submerged lands are not federally owned but are instead titled in the states bordering them. See Submerged Lands Act 43 U.S.C. §§ 1301- 1311

**(a) Confirmation and establishment of title and ownership of lands and resources; management, administration, leasing, development, and use**

> It is determined and declared to be in the public interest that
>
>> (1) title to and ownership of the lands beneath navigable waters within the boundaries of the respective States, and the natural resources within such lands and waters, and
>> (2) the right and power to manage, administer, lease, develop, and use the said lands and natural resources all in accordance with applicable State law be, and they are, subject to the provisions hereof, recognized, confirmed, established, and vested in and assigned to the respective States or the persons who were on June 5, 1950, entitled thereto under the law of the respective States in which the land is located, and the respective grantees, lessees, or successors in interest thereof;

43 U.S.C. § 1311(a)(1),(2).

The states' ownership of submerged lands is not absolute but is held in trust for the people of the states under the public trust doctrine. See *State of Illinois v. Illinois Cent. R. Co.*, 146 U.S. 387, 452-3 (1892). The public trust doctrine protects state residents' beneficiary interests in fishing and a healthful environment. See *People ex rel. Scott v. Chicago Park Dist.*, 360 N.E. 2d 773, 780-1, 66 Ill 2d 65, 78-81 (Ill., 1976)("On this question of changing conditions and public needs, it is

appropriate to observe that there has developed a strong, though belated, interest in conserving natural resources and in protecting and improving our physical environment.." and "It is obvious that Lake Michigan is a valuable natural resource belonging to the people of this State in perpetuity.")

Defendants' assertion that the submerged lands are part of their range, such that their discharges are not off-range, allows them to violate Plaintiffs' beneficiary interests in the Lake Michigan environment and is at odds with the public trust doctrine.  The submerged lands are therefore not part of Defendants' range and their discharges of lead bullets onto it represent unlawful waste under RCRA.

The use of Lake Michigan as an impact area at the FBI site, as codified under 33 C.F.R. § 334.830 is likewise a violation of RCRA and the public trust doctrine.

Plaintiffs are therefore entitled to declaratory and injunctive relief for Coast Guard and FBI violations and dismissal for lack of jurisdiction would be improper based on these jurisdictional facts.

### Plaintiffs' RCRA Imminent and Substantial Endangerment Claim Cannot Be Dismissed Because Defendants Had Not Initiated a CERCLA Cleanup Prior to Suit and CERCLA Does Not Provide Defendants Any Discretion For A Remedy Other Than Retrieval

The CERCLA cleanup purported to be initiated by Defendant Department of Justice at the FBI site did not begin, if at all, until they notified US EPA on March 7, 2008 (see preliminary injunction reply, exhibit 12) and arguably not until April 30, 2008 when they first gave public notice of the cleanup in their motion to dismiss. CERCLA does not allow for secret cleanups and as detailed in Plaintiffs motion for preliminary injunction reply brief, the 2006 Phase I Assessment that Defendants claim initiated a cleanup was held from the public as "privileged and confidential attorney-client work product."  See motion to dismiss, attachment 5, exhibit 1. This study was first made public on April 21, 2008 as part of Court ordered discovery.

Because no cleanup was initiated prior to suit being filed, this Court has jurisdiction to order Plaintiffs' remedies as presented in Complaint Exhibits M and N. See 42 U.S.C. §§ 6972(a)(1)(B)( any person may commence a civil action on his

own behalf… against any person, including the United States and any other governmental instrumentality or agency… who has contributed or who is contributing to the past or present handling…or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment ); 6972(a)(2)(The district court shall have jurisdiction…to restrain any person who has contributed or who is contributing to the past or present handling…or disposal of any solid or hazardous waste referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both.)

It would frustrate the intent of Congress to empower citizens to enforce the environmental laws if defendants, after reviewing the strength of the filed lawsuit, could bar that suit by initiating a cleanup after the notice period had expired and suit was filed. The purpose of the statutorily mandated 90-day notice of intent period is to give Defendants the opportunity to come into compliance or for the regulators to exercise their right to pre-empt suit, neither of which happened in this case. There would be little incentive for private attorneys general to invest the resources investigating violations, giving notice, and bringing suit only to get thrown out of court on jurisdictional facts created after suit was filed.

Defendants' invocation of a CERCLA cleanup and Section 113(h) as a bar to Plaintiffs remedy is improper for several other reasons. As Defendants point out in their motion to dismiss, "Congress enacted CERCLA as a response to serious public health threats posed by abandoned or inactive hazardous waste disposal facilities." see motion to dismiss, pg. 11. Here, Defendants are trying to invoke CERCLA at an active site that is still discarding hazardous waste into the environment. This speaks poorly of Defendants purported cleanup that they did not recognize the site is continuing to discard pollutants into the environment even as they claim to assess past discharges. RCRA, not CERCLA, is the proper authority for assessing the environmental impact of their discharges because this is an active site.

RCRA itself speaks to when an imminent and substantial endangerment suit brought pursuant to 42 U.S.C. § 6972(a)(1)(B) is barred by operation of CERCLA. According to 42 U.S.C. § 6972(b)(2)(B):

No action may be commenced under subsection (a)(1)(B) of this section if the Administrator, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment—

(ii) is actually engaging in a removal action under section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [42 U.S.C. 9604];

(iii) has incurred costs to initiate a Remedial Investigation and Feasibility Study under section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [42 U.S.C. 9604] and is diligently proceeding with a remedial action under that Act [42 U.S.C. 9601 et seq.];

Defendants purported cleanup is not being conducted by the Administrator (US EPA) and a removal action is not ongoing so 6972(b)(2)(B)(ii) is not properly invoked. Defendants also admit to only beginning a Preliminary Assessment. <u>See motion to dismiss, exhibit 5</u>. The cleanup has not therefore advanced to a remedial investigation and feasibility study or a remedial action that would preclude this Court, according to 6972(b)(2)(B)(iii) of RCRA, from ordering Plaintiffs' proposed cleanup.

Furthermore, CERCLA would limit Defendants' eventual remedial choice to Plaintiffs proposed retrieval of underwater munitions by the feasibility study requirements in the statute. CERCLA requires all feasible alternatives to be assessed against nine criteria. See 40 C.F.R. § 300.430 (e). Two are threshold criteria, protectiveness of human health and the environment and compliance with applicable or relevant and appropriate requirements (ARARS). 40 C.F.R. § 300.430 (f)(1)(i)(A). US EPA has determined that RCRA standards are ARAR's[1]. RCRA makes it a statutory violation to discard waste into the environment. The Military Munitions Rule further clarifies that munitions that land off-site become discarded waste under RCRA until they are retrieved. 62 Fed.Reg. 6622, 6626-30. Any CERCLA remedy that failed to retrieve the munitions would leave them as discarded waste and fail the threshold criteria of complying with ARAR's (RCRA).

---

[1] US EPA Guidance on RCRA as CERCLA ARAR's,
http://www.epa.gov/superfund/policy/remedy/sfremedy/arars/rcra.htm

The Defendants discretion to choose a remedy under CERCLA is therefore limited to retrieval of off-range munitions.

Complicating the recovery operation is that the Lake Michigan impact area contains unexploded artillery from prior Navy training. Defendants have an unstated institutional policy of abandonment of underwater unexploded ordnance. Where underwater ordnance exists they will typically deny there is a technological solution and then claim it is too dangerous to use divers. Plaintiffs' expert has developed remote controlled robotic technology capable of removing underwater ordnance without sending divers within the underwater blast radius. Plaintiffs conducted a search, engaging other experts in military cleanups, and did not find any other technological solutions besides that provided by Plaintiffs expert.

Because Defendants have not contacted Plaintiffs expert to engage his services it is clear that their claim to have initiated a CERCLA cleanup is simply an effort to deprive this Court of its jurisdiction without intending to comply with CERCLA requirements.

Plaintiffs are therefore entitled to declaratory relief that Defendants have discarded these munitions, the accumulation of which present an imminent and substantial endangerment to human health and the environment; and mandatory injunctive relief for the retrieval of these munitions. Dismissal for lack of jurisdiction would be improper based on these jurisdictional facts.

### Plaintiffs' CERCLA Claims Cannot Be Dismissed Because They Have Incurred Cleanup Costs and Have a Right As Trust Beneficiaries of Submerged Lands to Make the Natural Resource Trustees (Defendants) Account For Their Damages and Waste

Plaintiffs' may act as natural resource trustee pursuant to trust principles and the public trust doctrine because the statutory natural resource trustees under CERCLA and their attorneys are themselves causing the damages. *Burrows v. Palmer*, 125 N.E.2d 484, 486 (Ill., 1955) ("In general, a trust beneficiary is entitled to such equitable relief as will protect his interest in the trust property when such interest is endangered by the wrongful acts of the trustee"); *Kluk v. Lang*, 531 N.E.

2d 790, 794, 125 Ill.2d 306, 315-6 (Ill., 1988)("If the public trust doctrine is to have any meaning or vitality at all, the members of the public…who are the beneficiaries of that trust, must have the right and standing to enforce it. To tell them that they must wait upon governmental action is often an effectual denial of the right for all time.")(citing *Paepcke v. Public Building Comm'n*, 46 Ill.2d 330, 341 (1970)); *United States v. Mitchell*, 463 U.S. 206, 227 (1983)("A trusteeship would mean little if the beneficiaries were required to supervise the day-to-day management of their estate by their trustee or else be precluded from recovery for mismanagement.")

Plaintiffs' efforts at identifying Defendants' wrongful acts are recoverable costs of cleanup and therefore entitle Plaintiffs to bring Count IV for compensation. In *Key Tronic*, even the efforts by a violating party to find other violating parties to share in cleanup costs were held as necessary response costs under CERLCA Section 107. *Key Tronic Corp. v. United States* 114 S.Ct. 1960 (1994)("Tracking down other responsible solvent polluters increases the probability that a cleanup will be effective and get paid for")

More than that, *Key Tronic* speaks to this situation where most of the costs of litigation may be necessary costs of response, because Plaintiffs here are not responsible for any of the pollution.  "The conclusion we reach with respect to litigation-related fees does not signify that all payments that happen to be made to a lawyer are unrecoverable expenses under CERCLA. On the contrary, some lawyers' work that is closely tied to the actual cleanup may constitute a necessary cost of response in and of itself under the terms of § 107(a)(4)(B)." Id.  Much of the *Keytronic* plaintiffs' litigation costs were not recoverable precisely because they were responsible for some of the pollution.

Plaintiffs here have done a substantial amount of work that should be considered part of the response, and would be considered so if conducted by the US EPA or Illinois EPA, the statutory natural resource trustees. Plaintiffs identified the polluting activities violating the law, identified damages to natural resources[2],

---

[2] This claim for natural resource damages is alternative, not cumulative, to Plaintiffs FTCA nuisance claim.

identified the potentially responsible parties, located the only company capable of conducting the required underwater retrieval action, negotiated the proposed contract, and brought suit so that the Court can order its implementation. Because of Plaintiffs suit, the FBI shut down its shotgun range that discharged directly into Lake Michigan and shut down their range after Plaintiffs investigation of adjacent properties found evidence of offsite discharges. In contrast, the natural resource trustees pursuant to CERCLA, US EPA and Illinois EPA chose not to preempt this suit during Plaintiffs 60 and 90-day notice period and have shown no interest in being involved in this cleanup.

Plaintiffs CERCLA claim therefore cannot be dismissed until the Court determines if their efforts as private attorney general, and trust beneficiaries acting as trustees, are necessary costs of response.  If so, their costs are recoverable separate from the attorney fee provisions for substantially prevailing parties.

Additionally, Plaintiffs are entitled to declaratory relief that Defendants' actions have damaged natural resources and dismissal for lack of jurisdiction would be improper based on these facts.

### Plaintiffs' FTCA Nuisance Claim Cannot Be Dismissed Because All Administrative Remedies Were Exhausted For Known Damages

Plaintiffs exhausted their administrative remedies by making their claim for damages to natural resources to Defendants' attorneys.  The relevant portion of the Federal Tort Claims Act is reproduced:

28 U.S.C. § 2675. Disposition by federal agency as prerequisite; evidence

(a) An action shall not be instituted upon a claim against the United States for money damages for…loss of property…caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

**(b)** Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency…relating to the amount of the claim.

Despite Defendants assertion that Plaintiffs failed to make a sum certain demand, Plaintiffs did in fact make their claims directly to Defendants attorneys. From Plaintiffs November 9, 2006 60-Day Notice of Intent to Sue:

4.   VIOLATION OF SEVERAL LAWS

4.1 Public Nuisance – The dumping of uncontained and uncontrolled lead on the lake bed constitutes a public nuisance on state titled lands.

See motion to dismiss, attachment 8.  This put Defendant Coast Guard and their attorney on notice of the claim Plaintiffs would be making.

Defendants' attorney in the present litigation, David Gualtieri, contacted Plaintiffs to dissuade them from bringing suit after the Coast Guard voluntarily suspended training.  See Complaint Exhibit C. Plaintiffs responded by demanding on January 24, 2007 $75,000 for the 62,584 lead bullets discharged into the Nations waters. id. The basis for these money damages is the public nuisance tort claim and CERCLA natural resource damage claim presented in the prior 60-day notice.

Defendants attorney failed to make the governments denial via certified or registered mail as required by 28 U.S.C. § 2675(a) and after six months Plaintiffs were free to consider their sum certain demand rejected and bring this claim. Because this suit was initiated on January 14, 2008, more than six months after making their claim, Plaintiffs exhausted their administrative remedies and timely brought suit.

The next issue is if Plaintiffs are limited to this $75,000 claim or if their $20 million claim "is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency."  At the time of the demand to the Coast Guard, Plaintiffs could not have known the extent to the Defendants total discharges including the FBI facility.  Once Defendant FBI responded to Plaintiffs FOIA request admitting to discharging lead bullets into the

Nations waters, Plaintiff filed a new 60 and 90-day Notice of Intent to Sue on October 2, 2007, again stating the public nuisance tort claim. <u>See motion to dismiss attachment 9</u>. Three months later, on January 14, 2008, Plaintiffs filed this suit with a $20 million damages claim.

Defendants might argue that the FBI site is not related to the Coast Guard violations and therefore the original $75,000 demand was not made to the other agencies, including the Department of Justice, Navy, Marines, and Department of Defense. This would be false because Plaintiffs' original demand was made to the attorney for all the federal agencies (the attorney also being the violator).

Giving notice of the claim to the Department of Justice was sufficient to put the entire Executive Branch on notice. When Plaintiffs challenged Defendant Department of Justice for representing its own interest in this case as a conflict of interest in also representing other federal agencies, Defendants responded to Plaintiff with the following:

> In litigation such as this, involving multiple federal agencies, the Department of Justice does not represent the interests of any single agency of the United States. Rather, the Department of Justice represents the Executive Branch and conducts litigation in the best interests of the United States as a whole.

<u>See Exhibit 1</u>. This unitary executive theory that makes all actions of federal agencies consistent as if done directly by the President should also bind these agencies in cases such as this where several agencies violate the same law with the same actions.

Plaintiffs could not have reasonably known in January of 2007 that the President had discharged the significantly greater number of lead bullets at the FBI facility based on information from the Coast Guards' unfolding violations. The greater damages sought for the FBI's discharges of lead bullets into the Nations waters are reasonably related to the earlier damages demanded for the Coast Guard's discharges of lead bullets into the Nations waters. But they were not reasonably discoverable at the time the original damages were demanded.

Plaintiffs are therefore entitled to recover[3] damages to natural resources and dismissal for lack of jurisdiction would be improper based on these facts.

### Defendant Department of Defense Was Given Statutory Notice To Their Attorney And Through Their Individual Departments

Plaintiffs gave notice to the United States President, Attorney General, Navy, and Coast Guard.  see motion to dismiss, exhibits 8, 9. This provided the Department of Defense their statutorily required notice of intent in at least three different ways.  First, under the unitary executive theory by notifying the President, the entire federal government is given notice of the violating activity. Second, by giving notice to the Attorney General, attorney for the Department of Defense, Plaintiffs fulfilled their notice obligation. Finally, because the Department of Defense represents the civilian control of the various branches of the military, by giving notice to the Navy and Marines, Plaintiffs gave notice to the DOD of its violating activities.

Plaintiffs are therefore entitled to bring suit against the Department of Defense and dismissal would be improper based on these facts.

Respectfully submitted,

/s/ Steven B. Pollack

_____
Blue Eco Legal Council
By Steven B. Pollack, one of its attorneys
3390 Commercial Ave
Northbrook, IL 60062
847-436-9566

---

[3] Plaintiffs recognize that the damages to natural resources are not properly paid to them and the complaint reflects this by asking that the damages be paid into a public cy pres type fund.  Plaintiffs have subsequently made to Defendants a settlement offer that they use the damages amount to clean up the property in exchange for turning the property over to the North Chicago Foss Park District.  If Defendants accept this offer, Plaintiffs propose they use any excess money towards the building of a new firearms facility elsewhere.